425 So.2d 781 (1982)
Mrs. Bettye Gray CORLEY, Individually, and as the Administratrix of the Successions of Guy Monroe Corley and Bryan Monroe Corley, Plaintiff-Appellant,
v.
GENE ALLEN AIR SERVICE, INC., and Oliver James Hunt, et al., Defendants-Appellees.
No. 82-421.
Court of Appeal of Louisiana, Third Circuit.
December 22, 1982.
Rehearings Denied February 7, 1983.
Cox, Cox & Townsley, Rex D. Townsley, Lake Charles, for plaintiff-appellant.
Raggio, Cappel, Chozen & Berniard, Christopher Trahan, Lake Charles, Oliver Schrumpf, Sulphur, for defendants-appellees.
Camp, Carmouche, Palmer, Barsh & Hunter, David R. Frohn and Geralyn P. Garvey, Lake Charles, for defendant-appellee-appellant.
*782 Woodley, Barnett, Cox, Williams & Fenet, J.L. Cox, Jr., Lake Charles, Tommy C. Rutledge, DeQuincy, for plaintiffs-appellees.
Before DOMENGEAUX, FORET and LABORDE, JJ.
DOMENGEAUX, Judge.
This case was consolidated at trial and on appeal with Shirley Mae Doyen, Individually, et al v. The Cessna Aircraft Company, et al, 425 So.2d 781 (La.App. 3rd Cir.1982).
The issues in these two cases will be discussed herein, although separate opinions in each case are being rendered on this date.
This case arose as a result of a tragic airplane crash that occurred on March 10, 1979, near DeQuincy, Louisiana, in which four persons were killed, namely: Guy M. Corley, his son, Bryan Monroe Corley, Fred Berryman Doyen, and his son, Kervin Randall Doyen. Plaintiff Bettye Gray Corley is the widow of Guy M. Corley and the mother of Bryan Monroe Corley, while plaintiff Shirley May Doyen is the widow of Fred Berryman Doyen and the mother of Kervin Randall Doyen. Both of the plaintiffs brought suit against Gene Allen Air Service, Inc., the lessor of the aircraft involved in the accident, as well as O.J. Hunt, the owner of the same. Numerous other parties were involved in the litigation, but they are not the subject of this appeal.
The trial court granted motions for summary judgment which were filed by Gene Allen Air Service, Inc., and O.J. Hunt in each of the suits filed by the plaintiffs. The plaintiffs devolutively appealed from these judgments.
For the reasons stated herein, we reverse.
Based on the depositions, interrogatories, and other items of evidence included in the records, the facts of this dispute appear to be as follows:
Defendant Gene Allen Air Service, Inc. provided airplane rentals, charter services, student pilot training, and fueling services at a public airport in DeQuincy, Louisiana. Defendant O.J. Hunt purchased a slightly used Model 172 N Cessna aircraft from Gene Allen on August 28, 1978, entering into a verbal leasepurchase agreement with Allen. By the terms of this contract, Allen would lease the airplane to members of the public and retain twenty-five percent of the rental as his fee, remitting the remainder to O.J. Hunt. Hunt was required by the agreement to pay for the gasoline and oil as well as for any maintenance that the plane needed.
Apparently, Guy Corley and Fred Doyen were interested in leasing an aircraft from Gene Allen Air Service, Inc. On March 9, 1979, Corley attempted to make arrangements with Gene Allen to rent an aircraft to be used the morning of March 10, 1979, in order to do some local flying. Allen replied that he would not be able to accommodate Corley since the plane was scheduled to be chartered at 8 o'clock or 8:30 the following morning. However, Fred Doyen later called and offered to fly early in the morning so that the plane could be returned before the charter was scheduled to leave. Allen agreed to allow Doyen to use the plane at that time. He also advised Doyen that the key to the plane would be left on top of the outside air conditioning unit, so that he could commence his flight without having to wait until 8 o'clock a.m. when Allen normally arrived at his office.
Shortly before 8 a.m. on March 10, 1979, Corley, Doyen, and their two sons, departed from runway 33 at DeQuincy Airport. When Gene Allen and his assistant Jeffery Lavendar, arrived at the airport, they saw the plane sitting at the end of the runway preparing to take off.
Allen testified in his deposition that the weather was cloudy at the time that the plane left the runway. He roughly estimated that the ceiling was about 600 feet, the visibility was probably a couple of miles, and that visual flight rules were not in effect. However, the investigator from the National Transportation Safety Board stated in his accident report that the ceiling was 200 feet obscured with visibility only *783 one-quarter of a mile. Allen further stated that he knew that Corley and Doyen were not qualified to fly airplanes in instrument flight rule conditions, and could only fly when visual flight rules were in effect.
According to Gene Allen, he made no attempt to contact the airplane when he saw it on the runway, despite the weather conditions. Instead, he went about his normal routine of making coffee, checking and balancing the cash register, etc. He did this despite the fact that in the past, he had refused to allow planes which had been rented to be flown when the weather was inclement.
When the plane did not return at its scheduled time, a ground search was commenced. At approximately 5 p.m., some nine hours after the plane had departed, the wreckage of the craft was found in an area within half a mile of the airport. Of the four occupants in the airplane, only Kervin Doyen was still alive at the time that the plane was spotted. He died shortly thereafter enroute to the hospital.
The aircraft in question had been previously equipped with an emergency locator transmitter (E.L.T.). This device emits a signal which assists in quickly locating a downed airplane. However, at some point in time prior to the accident, the E.L.T. was discovered to be inoperative and was removed from the aircraft. The plane was never taken out of operation in spite of this. Furthermore, Gene Allen testified that he normally didn't make it a practice to inform potential lessees that an E.L.T. had been removed from their aircraft. He also didn't recall ever warning Fred Doyen or Guy Corley that the E.L.T. had been removed from the plane they were renting. The E.L.T. was not repaired and returned to Gene Allen Air Services until March 19, 1979, some nine days after the fatal crash. Appellants argue that had such a device been on the airplane, that search crews might have spotted the craft in time to save Kervin Doyen's life.[1]
The issues raised on appeal are:
(1) Whether there was a possibility that the defendants could be found negligent for failing to provide an aircraft equipped with an emergency locator transmitter, such that summary judgment was improperly granted in their favor.
(2) Whether the defendants could potentially be held vicariously liable for the alleged negligent acts of the "pilot in command" of this particular flight, precluding resolution of this suit by summary judgment.
(3) Whether the defendants could be held liable for failing to adequately warn or prevent the decedents from flying due to inclement weather conditions such that summary judgment in the defendant's favor could not have been granted.
Article 966 of the Code of Civil Procedure describes the motion for summary judgment:
"The plaintiff or defendant in the principal or any incidental action, with or without supporting affidavits, may move for a summary judgment in his favor for all or part of the relief for which he has prayed. The plaintiff's motion may be made at any time after the answer has been filed. The defendant's motion may be made at any time.
The motion for summary judgment shall be served at least ten days before the time specified for the hearing. The adverse party may serve opposing affidavits prior to the date of the hearing. The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact, and that mover is entitled to judgment as a matter of law."
Summary judgment procedure should be used both cautiously and sparingly, and not as a substitute for trial. The burden of proof is on the mover to demonstrate that *784 there is no genuine issue of material fact, and any reasonable doubt as to the existence of such an issue is resolved in favor of a full trial on the merits. The court may not determine or inquire into the merits of the issues raised on a motion for summary judgment, but rather must limit itself to a determination of whether there is a genuine issue of material fact. Mecom v. Mobil Oil Corp., 299 So.2d 380 (La.App. 3rd Cir.1974), writ refused 302 So.2d 308 (La.1974).
In Vermilion Corporation v. Vaughn, 397 So.2d 490 (La.1981), the Supreme Court established a strict burden which must be met by parties moving for summary judgments. In that case, it stated:
"To satisfy his burden the mover must meet a strict standard by a showing that is quite clear what the truth is, and that excludes any real doubt as to the existence of any genuine issue of material fact. Adickes v. S.H. Kress & Co., supra [398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142]; Sartor v. Arkansas Nat. Gas Corp., 321 U.S. 620, 64 S.Ct. 724, 88 L.Ed. 967 (1944). The papers supporting mover's position are closely scrutinized, while the opposing papers are indulgently treated, in determining whether the mover has satisfied his burden. Adickes v. S.H. Kress & Co., supra; 6 Moore's Federal Practice, § 56.15[3]."
With reference to the absence of the E.L.T. from the aircraft involved in this dispute, the defendants allege that they were properly granted a summary judgment because they were not required by law to have such a device on the plane used by the decedents. They cite the Federal Aviation Administration provisions located in 14 Code of Federal Regulations 91.52 as authority for this proposition. That Regulation generally requires U.S. registered civil airplanes to be equipped with emergency locator transmitters, but it allows several exceptions, including:
"(3) Aircraft while engaged in training operations conducted entirely within a 50-mile radius of the airport from which such local flight operations began;"
Allegedly, the decedents were using the airplane in order to perform some "touch and gos" which the defendants maintain constitute "training operations". Furthermore, since the crash occurred within one mile of the airport, the defendants argue that the FAA regulations requiring planes to be equipped with E.L.T.s did not apply to the aircraft in question.
However, the defendants failed to take note of the fact that negligence does not solely depend on violation of a statute or rule. Southern Natural Gas Company v. Gulf Oil Corporation, 320 So.2d 917 (La. App. 3rd Cir.1975), writ denied 324 So.2d 812 (La.1976). Unreasonable conduct is not an excuse when one merely complies with minimum regulatory requirements. Southern Natural Gas Company, supra.
We feel that the actions of Gene Allen and O.J. Hunt must be evaluated in light of applicable negligence standards in order to determine their liability for allowing the decedents to use a plane that lacked an emergency locator transmitter. The circumstances surrounding the lease of the craft could possibly indicate negligence on the part of the defendants in their leasing of the plane to the decedents with the knowledge that it lacked an emergency locator transmitter or their failure to warn the men that the E.L.T. had been removed from the craft. According to the strict standards established by the Supreme Court in Vermilion Corporation, supra, we feel that summary judgment was erroneously granted on this issue.
With regard to the second issue concerning the possible vicarious liability of the defendants for the negligence of the "pilot in command" of the flight, the appellants argue that the defendants are responsible by application of 49 U.S.C. § 1301(31), which provides:
"`Operation of aircraft' or `operate aircraft' means the use of aircraft, for the purpose of air navigation and includes the navigation of aircraft. Any person who causes or authorizes the operation of aircraft, whether with or without the right *785 of legal control (in the capacity of owner, lessee, or otherwise) of the aircraft, shall be deemed to be engaged in the operation of aircraft within the meaning of this chapter."
Appellants argue that Gene Allen Air Service is a "... person who causes or authorizes the operation of aircraft...." and that it is vicariously liable for the negligence of the "pilot in command". They cite Sosa v. Young Flying Service, 277 F.Supp. 554 (So.Div.Texas, 1967) as authority for this proposition.
Defendants on the other hand seek to avoid vicarious liability by virtue of the provisions of 14 Code of Federal Regulations 91.3(a), which states:
"(a) The pilot in command of an aircraft is directly responsible for, and is the final authority as to, the operation of that aircraft."
They argue that regardless of who was in command of the aircraft at the time that it crashed, that they are absolved completely from vicarious liability since the pilot ultimately determined to be in command of the craft had final authority concerning its safe operation.
We are unable to agree with the defendants' proposition. The theory of vicarious liability propounded by the plaintiffs would actually allow the negligence of the pilot of the airplane to be imputed to the defendants regardless of their own personal negligence. Such indirect legal responsibility on the part of the defendants could exist in spite of the regulation, supra, that the "pilot in command" is directly responsible for the operation of the aircraft.
In order to determine whether or not the defendants could be held vicariously liable for the acts of the pilot of the aircraft, it is first necessary to ascertain the possible negligence of such pilot. In this case, the trial court had no opportunity to make a finding of fact in this regard. In fact, no determination was ever made by the trial court as to which of the two pilots involved was the "pilot in command". We are in no position whatsoever to determine or inquire into the negligence of the pilot or pilots. There is a genuine issue of material fact as to their negligence which has yet to be resolved. This issue must be referred back to trial on the merits.
Finally, appellants claim that a genuine issue of material fact exists concerning the negligence of Gene Allen in failing to warn the pilots of the inclement weather conditions that existed when the doomed aircraft took off from Runway 33 at DeQuincy Airport on March 10, 1979. They assert that these conditions required observance of instrument flight rules rather than visual flight rules and that the decedent pilots were not competent to fly under these conditions. Gene Allen Air Service responds in its brief that the status of the weather could not affect the outcome of the suit since the FAA regulations make the pilot in command directly responsible for, and the final authority as to the operation of the aircraft.
Once again, we are unable to conclude that the defendants have met their strict burden of excluding any real doubt as to the existence of any genuine issue of material fact. Simply because the pilot in command is the final authority as to the operation of the aircraft according to the statute does not relieve the defendants of liability for their negligent acts. Southern Natural Gas Company, supra.
The facts are in dispute as to exactly what the weather conditions were at 8 a.m. on March 10, 1979, at DeQuincy Airport. Furthermore, it is unclear to us why Allen failed to stop the decedents from flying the airplane under the alleged weather conditions, or why he made no attempt to contact the craft by radio when he saw it on the runway. These questions must be answered before a determination can be made that the defendants were free from liability.
For the above and foregoing reasons, it is Ordered, Adjudged, and Decreed that the summary judgment granted in favor of Gene Allen Air Service, Inc. and O.J. Hunt be and the same is hereby reversed.
*786 It is further Ordered that this case be remanded back to the trial court for proceedings not inconsistent with this opinion.
All costs on appeal are assessed against Gene Allen Air Services, Inc. and O.J. Hunt.
REVERSED AND REMANDED.
PER CURIAM.
Defendant-appellee, O.J. Hunt, by application for rehearing has correctly called our attention to the fact that he had been previously dismissed from this case (No. 82-421) via summary judgment granted in his favor in the district court on November 5, 1981, and that that judgment dismissing him has not been appealed.
Through error or inadvertance the defendant-appellee, O.J. Hunt, was included as having been granted his motion for summary judgment by judgment of the district court dated April 30, 1982. It was that latter judgment which plaintiff appealed, and upon which this Court proceeded. That single judgment gave the appearance that the defendant-appellee, O.J. Hunt was intended to be designated as an appellee in both consolidated suits, namely this one, No. 82-421, and the other one, No. 82-420, 425 So.2d 786.
In view of the above it is hereby ordered that our reversal of the summary judgment which was granted in favor of the defendant-appellee, O.J. Hunt, be and the same is hereby deleted from our opinion and said defendant is properly dismissed from this case. Additionally, all costs on appeal in this case are now assessed solely to defendant-appellee, Gene Allen Air Service, Inc.
Our action on this application for rehearing in no way affects the status of defendant-appellee, O.J. Hunt as an appellee in the consolidated case of Doyen, 425 So.2d 786.
In all other respects the judgments rendered in these two consolidated cases are to remain unchanged, and with this explanation, the application for rehearing filed by O.J. Hunt is hereby denied.
NOTES
[1] Actually, this argument was only advanced in the consolidated Doyen case, 425 So.2d 786.