|2CARTER, Judge.
This is an appeal from a trial court judgment granting a motion for summary judgment in an action for damages.

FACTS

On October 18, 1990, plaintiff, Kathy C. Haydel, was standing outside of her home in Schriever, Louisiana, when she was overcome by a cloud of anhydrous ammonia (a chemical used as a fertilizer). The cloud allegedly enveloped her home, forcing plaintiff and her children to evacuate and allegedly causing them injuries.
On March 19, 1991, plaintiff, individually and on behalf of her two minor children, Nikki Richard and Michelle Haydel, filed an action against Tri-State Delta Chemicals, Inc. d/b/a Cropmate Company (Cropmate) and other defendants for damages arising out of the anhydrous ammonia-release on October 18, 1990.[1] The petition alleged that the anhydrous ammonia was released into the air by employees of Hercules Transport, Inc. (Hercules) while attempting to transfer the chemical from a tank truck to a storage facility operated by Cropmate. The Hercules employee determined that the tank truck’s pump was not operating properly and attempted to use the pump of another truck to accomplish the transfer to the storage facility. The Hercules employee misconnect-ed the hose running from his truck to the pump of the other truck, necessitating a re *411 lease of the contents of the hose. The Hercules employee then released the contents of the hose into the air through a bleeder valve located on top of his tank truck.
In the petition, plaintiffs alleged that, as a result of the chemical release, they sustained personal injuries including, but not limited to, injuries to their eyes, skin, bronchial passages, sinus and nasal cavities, throat, and lungs, as well as psychological injuries. Plaintiffs also alleged special and exemplary damages under LSA-C.C. art. I32315.3.[2] The following defendants were alleged to be solidarity liable for plaintiffs’ injuries: Hercules Transport, Inc. (Hercules); O’Neal Gas, Inc. (O’Neal Gas); LPG Risk Retention Group Insurance Company (LPG); Cropmate; and Reliance Insurance Company.
On August 16, 1991, plaintiffs filed a first amended petition, alleging the following: (1) that the tractor units involved in the release were owned by O’Neal Gas and operated by Hercules employees;[3] (2) that the tank/trailer units were owned by Cropmate and leased to Hercules;[4] (3) that Hercules and O’Neal Gas were insured by LPG; and (4) that Cropmate was insured by Reliance Insurance Company.[5]
Plaintiffs alleged that the cause of their injuries and damages were the following nonexclusive acts of negligence and/or strict liability on the part of Cropmate: (1) custody of a defective thing posing an unreasonable risk of harm to others; (2) failure to warn others of the dangerous propensities of the equipment it owned; (3) failure to warn residents near the storage facility of the dangers inherent in the operations; (4) negligent design and construction of the tanks involved; and (5) any and all acts of negligence and/or strict liability which may be proven at trial.
On January 21, 1992, Cropmate filed a motion for summary judgment, contending that it had no employees or equipment involved in the release of anhydrous ammonia and that it had no personnel at the storage facility at the time of the mishap. Cropmate argued that its only involvement was the “mere happenstance of owning the |4storage facility next to the Hercules trucks.” Crop-mate indicated further that the location of its storage facility was in compliance with the regulations set forth by the Anhydrous Ammonia Commission of Louisiana.
Attached to Cropmate’s motion for summary judgment were, among other things, portions of various depositions, the rules and regulations governing the sale, storage, transportation, and handling of anhydrous ammonia, and the affidavit of Joseph Champagne. In his affidavit, Champagne stated that Cropmate’s storage facility is located at a distance greater than all of the minimum distances listed for inhabited dwellings in the regulations of the Anhydrous Ammonia Commission of Louisiana.
On September 29, 1992, the trial court denied Cropmate’s motion for summary judgment. The trial court indicated that Crop-mate had no involvement in the accident and that, normally, it would grant Cropmate’s motion for summary judgment. However, the trial court reasoned that, because Crop-mate owned the tank/trailer units involved in the release of anhydrous ammonia and because the pump on one of the tank/trailer units failed to function properly prior to the release, there were issues of material fact in dispute with regard to whether there was a defect in the tank/trailer unit and Cropmate’s liability therefor.
On August 10, 1993, O’Neal Gas filed a motion for summary judgment based on the undisputed fact that its tank/trailer units *412 were not involved in the release of the anhydrous ammonia. The trial court subsequently granted O’Neal Gas’s motion for summary judgment, dismissing plaintiffs’ claims against it.
On August 13, 1993, Cropmate filed a second motion for summary judgment, urging that the anhydrous ammonia was released by the mere inadvertence of the Hercules employee and not through any “defect” in Crop-mate’s tank/trailer units. On September 20, 1993, the trial court granted Cropmate’s motion for summary judgment.[6] Plaintiffs appealed from this adverse judgment, assigning as error the trial court’s granting of Crop-mate’s motion for summary judgment.

|5SUMMARY JUDGMENT

A motion for summary judgment is a procedural device used to avoid a full-scale trial when there is no genuine factual dispute. Ouachita National Bank in Monroe v. Gulf States Land & Development Inc., 579 So.2d 1115, 1120 (La.App. 2nd Cir.), writ denied, 587 So.2d 695 (La.1991). The motion should be granted only if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, show that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law. LSA-C.C.P. art. 966; Thompson v. South Central Bell Telephone Company, 411 So.2d 26, 27 (La.1982); Legros v. Norcen Exploration, Inc., 583 So.2d 859, 860 (La.App. 1st Cir.), writs denied, 588 So.2d 101, 109 (La.1991).
A fact is material if it is essential to the plaintiffs cause of action under the applicable theory of recovery and without which the plaintiff could not prevail. Material facts are those that potentially insure or preclude recovery, affect the litigant’s ultimate success, or determine the outcome of a legal dispute. Penalber v. Blount, 550 So.2d 577, 583 (La.1989).
The burden is upon the mover for summary judgment to show that no genuine issues of material fact exist, and only when reasonable minds must inevitably conclude that mover is entitled to judgment as a matter of law is summary judgment warranted. Robertson v. Our Lady of the Lake Regional Medical Center, 574 So.2d 381, 384 (La.App. 1st Cir.1990), writ denied, 573 So.2d 1136 (La.1991). In determining whether material facts have in fact been disposed of, any doubt is to be resolved against granting the summary judgment and in favor of trial on the merits. Sanders v. Hercules Sheet Metal, Inc., 385 So.2d 772, 775 (La.1980).
Appellate courts review summary judgments de novo under the same criteria that govern the trial court’s consideration of whether summary judgment is appropriate. Schroeder v. Board of Supervisors of Louisiana State University, 591 So.2d 342, 345 (La.1991). Because it is the applicable substantive law that determines materiality, whether a particular fact in dispute is material can be seen only in light of the substantive |6law applicable to the case. Sun Belt Constructors, Division of MCC Constructors, Inc. v. T & R Dragline Service, Inc., 527 So.2d 350, 352 (La.App. 5th Cir.1988).
The applicable substantive law in the instant case involves the following theories of liability: absolute liability; strict liability; and negligence.

ABSOLUTE LIABILITY

Liability for ultrahazardous activities involves different considerations than liability under LSA-C.C. art. 2317 for creating or maintaining a thing which presents an unreasonable risk of harm. There are some activities in which the risk may be altogether reasonable and still high enough that the party ought not undertake the activity without assuming the consequences. Such activities include pile driving, storage of toxic gas, blasting with explosives, crop dusting with airplanes, and the like. These activities can cause injury to others, even when conducted with the greatest prudence and care.[7] Kent *413 v. Gulf Staten Utilities Company, 418 So.2d 493, 498 (La.1982).
For these particular activities, Louisiana courts have imposed absolute liability, which virtually makes the enterpriser an insurer. Kent v. Gulf States Utilities Company, 418 So.2d at 498. The enterpriser, whether or not negligent in any respect, causes the damage, and the injured party recovers simply by proving damage and causation. Kent v. Gulf States Utilities Company, 418 So.2d at 498. (Emphasis added). In this context, causation refers to causation of the injury. Bergeron v. Blake Drilling & Workover Company, Inc., 599 So.2d 827, 840 (La.App. 1st Cir.), writs denied, 605 So.2d 1117, 1119 (La.1992).
Whether an activity qualifies as ultra-hazardous in Louisiana is a question of law to be determined after a balancing of claims and interests, weighing of the risk and gravity of harm, and consideration of the individual and societal rights and obligations. Ainsworth, v. Shell Offshore, Inc., 829 F.2d 548, 550 (5th Cir.1987), cert. denied, 485 |7U.S. 1034, 108 S.Ct. 1593, 99 L.Ed.2d 908 (1988); Perkins v. F.I.E. Corporation, 762 F.2d 1250, 1266 (5th Cir.1985); Triplette v. Exxon Corporation, 554 So.2d 1361, 1362 (La.App. 1st Cir.1989). The court in Perkins, 762 F.2d at 1267-68, discussed the Louisiana doctrine of ultrahazardous activity in detail, finding the doctrine to be defined by three boundaries: (1) the activity must relate to land or some other immovable; (2) the activity itself must cause the injury, and the defendant must be engaged directly in the injury causing activity; and (3) the activity must not require substandard conduct to cause injury. Ainsworth v. Shell Offshore, Inc., 829 F.2d at 550; Hawkins v. Evans Cooperage Co., Inc., 766 F.2d 904, 907 (5th Cir.1985); Triplette v. Exxon Corporation, 554 So.2d at 1362.
In cases of absolute liability (or liability without proof of negligence or other fault), liability is imposed as a matter of policy when harm results from the risks inherent in the nature of the activity. The steps taken by the enterpriser to protect others from the inherent risks of the activity are not relevant to the determination of liability. Kent v. Gulf States Utilities Company, 418 So.2d at 498.
In the instant case, Charles W. Cain, Cropmate Division manager, testified by deposition that Cropmate is primarily in the fertilizer and propane retail business and that Cropmate maintains two anhydrous ammonia storage tanks at the Southern Pacific Railroad yard in Schriever, Louisiana. According to Cain, the anhydrous ammonia is delivered to the storage facility by common carrier; Hercules has been transporting the chemical for Cropmate under contract since 1988. Cain stated that there have been no other accidents or incidences involving the transfer of the chemical from the transport trucks to the storage facility.
Ronald Day, driver of the Hercules truck involved in the release of anhydrous ammonia on October 18, 1990, testified by deposition that he attempted to offload the anhydrous ammonia from his truck’s tank into the Cropmate storage tank, but a malfunctioning pump on his tank/trailer unit prevented him from accomplishing the offloading procedure. When another Hercules driver, Judy Duffell, arrived, she offloaded her load of anhydrous ammonia. Day then attempted to connect the transfer hose from |ghis truck’s tank to the pump on Duffell’s tank in order to offload his load of anhydrous ammonia. Once Duf-fell engaged the pump, Day realized that he had misconnected the hose. However, prior to disconnecting the hose and properly reconnecting it, the contents of the hose had to be released. After an unsuccessful attempt to release the contents into a water barrel at the Cropmate facility, Day decided to release the contents of the hose (approximately three gallons) into the air through a bleeder valve located on top of the truck’s tank. According to Day, he checked the direction of the wind and then released a test cloud and watched it dissipate. He then slowly released the remaining contents into the air through the bleeder valve.
*414 The deposition testimony of both Day and Duffell indicates that Day misconnected the hose on the Hercules truck’s tank. According to the testimony, before the hose could be disconnected and properly reconnected, the anhydrous ammonia contained in the hose had to be released. Thus, it is undisputed that the release was caused by error on the part of the Hercules driver, and not by any malfunction of the Cropmate storage tanks. In fact, Duffell stated that the Crop-mate storage tank functioned properly when she transferred her load into the tank. Day also testified that, once he made the proper reconnection, he had no problem transferring his load into the Cropmate storage tank.
As previously noted, in order for absolute liability to apply, plaintiffs must prove damage and causation (of the injury) with regard to Cropmate’s activities. There is no dispute that the cause of plaintiffs’ alleged injuries from the ammonia exposure was the Hercules driver’s negligence in connecting the hose to the Hercules truck’s tank, necessitating the release. Clearly, plaintiffs’ alleged injuries were not caused by Cropmate. Therefore, the trial court was correct in granting Cropmate’s motion for summary judgment based on absolute liability.

STRICT LIABILITY FOR ALLEGED DEFECTIVE PUMP ON TRAILER

The trial court denied Cropmate’s first motion for summary judgment because it felt that genuine issues of material fact remained with regard to whether the tank/trailer unit involved in the anhydrous ammonia release was defective due to the | malfunctioning pump. However, in granting Cropmate’s second motion for summary judgment, the trial court apparently determined that there were no longer any genuine issues of material fact in dispute and that the tank/trailer unit was not defective. Accordingly, defendants could not be held strictly liable.
LSA-C.C. art. 2317 addresses strict liability and provides as follows:
We are responsible, not only for the damage occasioned by our own act, but for that which is caused by the act of persons for whom we are answerable, or of the things which we have in our custody.
One may recover under LSA-C.C. art. 2317 by showing the following: (1) that the thing which caused the damage was in the care or custody of the defendant, (2) that it had a vice or defect, that is, some condition which occasioned an unreasonable risk of injury, and (3) that the injury was caused by the defect. Boyd v. Washington — St. Tammany Electric Cooperative, 618 So.2d 982, 984 (La.App. 1st Cir.), writ denied, 625 So.2d 1045 (La.1993). Upon proof of these elements, the burden shifts to the defendant to prove that the damage was caused by victim fault, third party fault, or an irresistible force. Davis v. State Farm Insurance Company, 558 So.2d 636, 640 (La.App. 1st Cir.1990).
“Custody,” for purposes of strict liability, does not depend upon ownership, but involves the right of supervision, direction, and control as well as the right to benefit from the thing controlled. See Bowles v. Litton Industries, Inc., Monroe Systems For Business Division, 518 So.2d 1070, 1074 (La.App. 5th Cir.1987); Myers v. Ford Motor Company, 486 So.2d 1030, 1039 (La.App. 2nd Cir.1986). Additionally, mere physical presence of the thing on one’s premises does not constitute custody. See LeBlanc v. Hullinghorst Industries, Inc., 542 So.2d 642, 645 (La.App. 5th Cir.), writ not considered, 544 So.2d 412 (La.1989).
Although it is undisputed that Crop-mate owns the tank/trailer units used by Hercules to transport the anhydrous ammonia, the record clearly indicates that the tank/trailer units were leased to Hercules by Cropmate. The lease agreement provides that Hercules is responsible for the maintenance and repair of the tank/trailer units and specifically requires Hercules to “provide the necessary parts and labor for the repair of all pumps on vehicles.” The deposition testimony of Thomas O’Neal, president of | ipHercules, indicates that Cropmate had no control over the Hercules tank/trailer units because, under the lease agreement, Hercules had exclusive control. Plaintiffs failed to produce any evidence to show that Cropmate had control of the Hercules tank/trailer unit involved in the release.
*415 Based on the foregoing, it is clear that Cropmate did not have custody of the tank/trailer unit involved in the release of anhydrous ammonia in the instant case. Therefore, since there are no genuine issues of material fact in dispute, Cropmate is not strictly liable for any alleged defect in the tank/trailer units.

LIABILITY OF CROPMATE FOR ALLEGED DEFECTIVE STORAGE FACILITY

Plaintiffs contend that genuine issues of material fact exist regarding Cropmate’s liability for certain “defects” in its storage facility, which presented an unreasonable risk of harm. Plaintiffs reason that, because Crop-mate failed to have personnel supervising the offloading operations at the facility at the time of the incident involved herein, the facility was “defective.” Plaintiffs also reason that Cropmate’s storage facility was “defective” because of its close proximity to local residences.
The owner, or person having custody, of immovable property has a duty to keep such property in a reasonably safe condition. He must discover any unreasonably dangerous condition on his premises and either correct the condition or warn potential victims of its existence. This duty is the same under the strict liability theory of LSA-C.C. art. 2317 as under the negligent liability theory of LSA-C.C. art. 2315. The difference between these theories of liability is that, under LSA-C.C. art. 2315, it must be shown that the owner, or person having custody, either knew or should have known of the risk; whereas, under LSA-C.C. art. 2317, a claimant is relieved of proving the defendant’s knowledge of the risk. Clement v. State, Department of Transportation and Development, 528 So.2d 176, 179 (La.App. 1st Cir.), writ denied, 532 So.2d 157 (La.1988); Pritchard v. Safeco Insurance Company, 529 So.2d 449, 452 (La.App. 1st Cir.), writ denied, 532 So.2d 159 (La.1988). Under either theory of liability, the plaintiff has the burden of proving that: (1) the property which caused the damage was in the “custody” of the defendant; (2) the property was defective because it had a condition which | ncreated an unreasonable risk of harm to persons on the premises (breach of the duty); and (3) the defect in the property was a cause in fact of the resulting injury. Desormeaux v. Audubon Insurance Company, 611 So.2d 818, 820 (La.App. 3rd Cir.1992), writ denied, 613 So.2d 1002 (La.1993); Farr v. Montgomery Ward and Company, Inc., 430 So.2d 1141, 1143 (La.App. 1st Cir.), writ denied, 435 So.2d 429 (La.1983).
In a strict liability determination, “defect” is an imperfection or deficiency which inheres with relative permanence in a thing as one of its qualities. Toussant v. Guice, 414 So.2d 850, 852 (La.App. 4th Cir.1982). In other words, a defect is some flaw or fault existing or inherent in the thing itself, creating an unreasonable risk of harm to others. Durkee v. City of Shreveport, 587 So.2d 722, 726 (La.App. 2nd Cir.), writ denied, 590 So.2d 68 (La.1991). A defect must be some quality in the thing itself that creates an unreasonable risk of harm and causes damage.
In both negligence and strict liability cases, the reasonableness of the risk is determined by balancing the probability and magnitude of the risk against the utility of the thing. Under either theory of liability, the court must decide if the risk which causes the injury is within the ambit of protection of the duty. Boudreaux v. Farmer, 604 So.2d 641, 650 (La.App. 1st Cir.), writs denied, 605 So.2d 1373, 1374 (La.1992).
A. Custody
There is no dispute that Cropmate had custody of the storage facility.
B. Defect
The issue to be decided is whether the storage facility had a vice or defect, i.e., a condition which created an unreasonable risk of harm to persons on the premises, because of Cropmate’s failure to have supervising personnel at the facility for the offloading operations and its close proximity to local residences.

*416
Lack of Cropmate Personnel

The deposition testimony of Thomas O’Neal, president of Hercules, reveals that Hercules and its drivers are qualified to handle and transport anhydrous ammonia. O’Neal testified that Hercules has common carrier certificates from the State of Louisi-anajijand from the Federal Interstate Commerce Commission, specifically for the transport of hazardous materials, which is a closely-regulated business. According to O’Neal, Hercules drivers are trained in the handling of hazardous chemicals and are tested by the Louisiana LP Gas Commission on the transport of hazardous materials. O’Neal explained that Hercules supplies its drivers with all necessary safety equipment in order to safely transport and handle hazardous materials. Additionally, Hercules conducts regularly scheduled mandatory safety meetings for its drivers on the handling of hazardous materials.
The deposition testimony of Charles W. Cain, Cropmate Division Manager, reveals that anhydrous ammonia is delivered to the storage facility by common carrier, Hercules. According to Cain, Hercules exercises complete control over the offloading operations at the Cropmate facility. Cain stated that Hercules had been transporting anhydrous ammonia for Cropmate under contract since 1988 and that there have been no other accidents involving the transfer of anhydrous ammonia from the transport trucks to the storage tanks.[8] Cain indicated that Crop-mate uses qualified common carriers (Hercules) who have appropriate expertise in the transport and handling of anhydrous ammonia!
The record reveals that Cropmate used only qualified carriers for the transportation of anhydrous ammonia to its storage facility and that it relied on their expertise in the offloading of the anhydrous ammonia at the Cropmate facility. Additionally, the testimony is undisputed that the Hercules drivers were tested, trained, and experienced in the transport of anhydrous ammonia and that, because of their training and experience, they were given complete control over the offloading operations at the Cropmate facility. According to the testimony in the record, Cropmate sends offloading assistance to its facility only if the transporter requests that it do so. Moreover, the arrangement between Cropmate and Hercules apparently has been successful; there [i.3has been no other accident at the Cropmate facility involving the transfer of anhydrous ammonia from the transport trucks to the Cropmate storage tanks.
Based on the foregoing, we conclude that Cropmate’s failure to have a representative supervising the offloading operations did not constitute a condition which created an unreasonable risk of harm, and, therefore, was not a “defect” in the Cropmate facility.

Location of Storage Facility

Attached to Cropmate’s motion for summary judgment were the “Rules And Regulations Governing The Sale, Storage, Transportation, and Handling of Anhydrous Ammonia In The State of Louisiana.” Rule 8.2.4.1 provides that the storage tanks shall be located at a minimum distance of 200 feet from “any other occupied building.” Also attached to Cropmate’s motion for summary judgment was the affidavit of Joseph Champagne. The affidavit provided that Champagne, a legal investigator, measured the distance between the Cropmate facility and various inhabited dwellings. According to the affidavit, the nearest residence was 205 feet from the storage facility, and the front yard of plaintiffs’ home was 349 feet from the facility. Based on his survey, Champagne stated that the storage facility is located at a distance greater than all of the minimum distances listed for inhabited dwellings in Rule 8.2.4.1 of the “Rules And Regulations Governing The Sale, Storage, Transportation, and Handling of Anhydrous Ammonia In The State of Louisiana.”
We note that negligence does not solely depend on the violation of a statute or rule. Corley v. Gene Allen Air Service, Inc., 425 So.2d 781, 784 (La.App. 3rd Cir.1982). Unreasonable conduct is not an excuse when *417 one merely complies with minimum statutory requirements. Corley v. Gene Allen Air Service, Inc., 425 So.2d at 784. However, where there is a normal situation, clearly identical with that contemplated by the statute or regulation, and no special circumstances or danger are involved, it may be found, and can be ruled as a matter of law, that the actor has done his full duty by complying with the statute, and nothing more is required. Pros-ser and Keeton, The Laio of Torts, 5th Edition (1984), § 36, p. 233.
|14In the instant case, the location of the anhydrous ammonia storage tanks complied with and, in fact exceeded, the applicable regulations. There were no special circumstances or dangers involved. The evidence submitted by Cropmate indicates that it acted reasonably in locating its storage facility, and plaintiffs failed to present any evidence to the contrary. Therefore, Crop-mate’s storage facility is not “defective” because of its “proximity” to local residences.
Because the record indicates that Crop-mate’s storage facility is not defective, it is unnecessary to address the issue of causation.

OTHER ALLEGED ACTS OF NEGLIGENCE

Plaintiffs contend that there are genuine issues of material fact in dispute with regard to whether Cropmate was negligent in other respects, specifically, for failure to warn nearby residents of the dangerous operations in which it was engaged and for failure to require Hercules to install globe valves on the transfer hose to contain the chemical when mishaps occur.
With regard to Cropmate’s alleged failure to warn nearby residents of the dangerous operations in which it was engaged, we note that, as previously indicated, the owner or custodian of immovable property has a duty to keep such property in a reasonably safe condition. He must discover any unreasonably dangerous condition on his premises and either correct the condition or warn potential victims of its existence. See Clement v. State, Department of Transportation and Development, 528 So.2d at 179. Because, as previously noted, Cropmate’s facility does not contain an unreasonably dangerous condition, Cropmate has no duty to warn of any such condition.
We will now consider Cropmate’s alleged negligence for its failure to require Hercules to install globe valves on the transfer hoses. Attached to Cropmate’s motion for summary judgment is a letter from George B. Stanton, Jr., of American Hazard Control Consultants, Inc., who had been retained as an expert by plaintiffs’ counsel, as well as Stanton’s deposition testimony. Stanton’s letter indicated that it would have been prudent for Cropmate to require Hercules to use a transfer hose fitted with a globe valve at each end and that it was unreasonable for Cropmate not to take such a preventive measure. h5In his deposition testimony, Stanton listed various reasonable alternative options for the Hercules driver to have utilized. The evidence indicates that the Hercules driver did, in fact, utilize some of the reasonable alternative options, specifically, the following: (1) running a temporary hose between his vent line and the water barrel and releasing the ammonia through the barrel; (2) calling supervisory personnel at the Hercules plant; and (3) discharging the anhydrous ammonia at a very low rate by “cracking the valve.”
As noted earlier, Cropmate owned the tank/trailer unit involved in the release of anhydrous ammonia, but it had been leased to Hercules. The lease provided that Hercules is responsible for the maintenance and repair of the tank/trailer units. Moreover, the record indicates that Hercules had exclusive control of the tank/trailer unit.
Based on the foregoing evidence, we cannot say that Cropmate’s failure to require Hercules to utilize one of the alternative options (requiring the use of globe valves), when some of the other reasonable alternatives were available, constitutes negligence.

CONCLUSION

For the foregoing reasons, the judgment of the trial court, granting Cropmate’s motion *418 for summary judgment, is affirmed at plaintiffs’ costs.
AFFIRMED.

. Upon reaching the age of majority, Nikki was subsequently added as a plaintiff in her own right.

.LSA-C.C. art. 2315.3 provides as follows:
In addition to general and special damages, exemplary damages may be awarded, if it is proved that plaintiff's injuries were caused by the defendant's wanton or reckless disregard for public safety in the storage, handling, or transportation of hazardous or toxic substances. As used in this Article, the term hazardous or toxic substances shall not include electricity.

. O'Neal Gas owned the trucks, but not the tank/trailer units.

. Cropmate subsequently filed a cross-claim against Hercules based on the written lease agreement.

. Planet Insurance Company, a subsidiary of Reliance, was later substituted as a defendant for Reliance.

. The judgment was signed on September 21, 1993.

. See Craig v. Montelepre Realty Company, 252 La. 502, 211 So.2d 627 (1968) and D'Albora v. Tulane University, 274 So.2d 825 (La.App. 4th Cir.), writs denied, 278 So.2d 504, 505 (La.1973) (pile driving); Langlois v. Allied Chemical Corporation, 258 La. 1067, 249 So.2d 133 (1971) (cs- *413 caping gas used in manufacture of petrochemical products); Gotreaiix v. Gary, 232 La. 373, 94 So.2d 293 (1957) (crop dusting by airplanes); Fontenot v. Magnolia Petroleum Company, 227 La. 866, 80 So.2d 845 (1955) (blasting with explosives).

. The only product-loss incident involved a pressure release valve that vented vapors from the Cropmate storage tank in 1987, but not while a transfer was in progress.