**IN THE SUPERIOR COURT OF THE STATE OF DELAWARE**
**IN RE: ASBESTOS LITIGATION**

SANDRA KIVELL, individually and as  )
Personal Representative of the Estate of  )
MILTON J. KIVELL, deceased,  )
  )
      Plaintiff,  )
  )    C.A. No. N15C-07-093 ASB
      v.  )
  )
UNION CARBIDE CORP. et al.,  )
  )
      Defendants.  )
  )

August 30, 2017
*Upon Defendant Union Carbide's*
*Motion for Summary Judgment*
**GRANTED**.

## **ORDER**

Plaintiff Sandra Kivell ("Plaintiff") cannot satisfy the summary judgment

criteria.[1]

Plaintiff alleges that her husband, Milton Kivell ("Mr. Kivell") contracted

mesothelioma which ultimately caused his death. Plaintiff alleges that Defendant

Union Carbide ("Defendant") was the premises owner of a petrochemical facility in

Taft, Louisiana where Mr. Kivell worked. Between January 1967 and October 1969

---

[1] Super. Ct. Civ. R. 56; *Smith v. Advanced Auto Parts, Inc.*, 2013 WL 6920864, at
*3 (Del. Super. Dec. 30, 2013); *see Moore v. Sizemore*, 405 A.2d 679, 680 (Del.
1979); *Nutt v. A.C. & S., Inc.*, 517 A.2d 690, 692 (Del. Super. Ct. 1986); *In re
Asbestos Litigation (Helm)*, 2012 WL 3264925 (Del. Aug. 13, 2012).

Mr. Kivell worked as a union pipefitter and welder. Defendant's Taft facility was a large industrial plant, and Mr. Kivell was involved in initial construction. Mr. Kivell did not work for Union Carbide directly, and he had no interaction with, and received no direction from Union Carbide personnel while at the Taft facility. Rather, he was employed by different third-party contractors, including Kiewitt Corporation and Stearns Roger Corporation. Union Carbide hired these third-party contractors to design and construct various process units. Mr. Kivell's duties included running pipe, and he stated that he worked "side-by-side" with insulators.

Defendants contend that Union Carbide never employed Mr. Kivell directly, and instead, he was employed by several different third-party engineering and construction firms. Defendant contends that these firms exercised exclusive control over Mr. Kivell's work area, and Mr. Kivell had no interaction with, and received no direction from Union Carbide personnel. Additionally, Defendant contends that these employers supplied their own tools and materials, and Union Carbide was not in custody or control of asbestos that Mr. Kivell was allegedly exposed to. Plaintiff argues that Mr. Kivel needed permission from Union Carbide staff before performing a "tie in" to an existing system,[2] and Mr. Kivell "performed a fair bit of maintenance at Union Carbide."

---

[2] Plaintiff did not offer a citation to the record for this proposition.

Plaintiff cites to *Thomas v. A.P. Green Indus., Inc.*, a Louisiana case that dealt with a similar scenario to the case at bar.[3] In *Thomas*, the plaintiff's employer signed a contract with a company, ELI, to "design, engineer, and construct" two power generation facilities.[4] The plaintiff "never worked directly for ELI; rather, he worked for three other companies involved in the construction of the [generation] facilities."[5] Thus, ELI raised the independent contractor defense to plaintiff's claim. The court stated:

> In resolving this issue, it is necessary to distinguish between the two ways in which a premises owner can be liable to employees of contractors who are injured while working on its premises: "(1) *directly*, for its own negligence; (2) *vicariously*, for the negligence of the independent contractor."[6]

Here, Plaintiff concedes that Defendant is not vicariously liable for the negligence of Mr. Kivell's employer. "Although the independent contractor defense is a bar to a vicarious liability claim, it is not a bar to direct liability claim arising out of a premises-owner's own negligence."[7]  Generally, "a premises owner has a duty of exercising reasonable care for the safety of persons on its premises and a duty of not exposing such persons to unreasonable risks of injury or harm," and "[t]his duty

---

[3] 933 So.2d 843 (La.Ct.App. 2006).
[4] *Id.* at 848.
[5] *Id.*
[6] *Id.* at 852.
[7] *Id.*

extends to employees of independent contractors for whose benefit the owner must take reasonable steps to ensure a safe working environment."[8]  Plaintiff argues that because the *Thomas* court relied heavily on the development of the evidence at trial regarding ELI's breach of duty, summary judgment is inappropriate in Mr. Kivell's case.  Additionally, Plaintiff cites to *Smith v. Union Carbide Corp.*, a 2014 decision from the United States District Court for the Eastern District of Louisiana.[9] In *Smith*, Union Carbide argued that it was "entitled to summary judgment on [p]laintiff's survival and wrongful death claims because Union Carbide owed no duty to Mr. Smith . . . under Louisiana law, 'no legal duty exists between a premises owner and the employee of a contractor, unless the premises owner exercised control over the work of the contractor'."[10] Citing *Thomas*, the court stated that the duty of reasonable care extends to employees of independent contractors, thus, it was clear that Union Carbide owed a duty to the plaintiff, and the "question then becomes whether [d]efendants are correct in arguing that there is insufficient evidence to prove any breach of duty."[11]  The *Smith* court cited *Jefferson v. Cooper/T Smith Corp.*, demonstrating that the *Jefferson* trial court was reversed where it granted summary judgment in favor of the premise owner when the "plaintiff presented a genuine

---

[8] *Id.*
[9] 2014 WL 4930457 (E.D. La. Oct. 1, 2014).
[10] *Id.* at *2.
[11] *Id.* at *4.

issues of material fact as to whether the premises owner breached its independent duty to its contractor's workers on its premises."[12] In *Jefferson*, the plaintiff was a longshoreman along a river, and he loaded, unloaded, transported, and handled asbestos cargo on the owner's premises for independent companies on the premises.[13] The *Smith* court analyzed *Jefferson* and stated:

> [T]he plaintiff presented no evidence showing that the premises owner ever handled, stored, or controlled the asbestos. Instead, the plaintiff provided evidence revealing that the workers on defendant's property were exposed to asbestos during their work, suggesting that the premises owner was aware of the risks that asbestos posed, and indicating that the premises owner defendant had the authority to prevent asbestos-containing products from entering the premises. The court concluded that although it was clear that the defendant's contractors maintained control and custody of the asbestos at all times, plaintiff had presented a genuine issue of material fact precluding summary judgment as to "whether [defendant] knew or should have known of the dangers posed by asbestos at the time [the deceased worked on defendant's premises], whether [defendant] knew or should have known that its facilities were inadequate for the handling and storage of asbestos on or in its premises, and whether it could have refused such hazardous cargo."[14]

In light of the *Thomas*, *Smith*, and *Jefferson* cases, it seems that a key issue the court looks at in negligence actions against the premises owner under Louisiana law is whether genuine issues of material fact exist as to defendant's knowledge of the

---

[12] *Id.* at *5

[13] *See Jefferson v. Cooper/T. Smith Corp.*, 858 So.2d 691, 695 (La.Ct.App. 2003).

[14] *Smith*, 2014 WL 4930457, at *5 (citing *Jefferson v. Cooper/T Smith Corp.*, 858 So.2d 691 (La.Ct.App. 2003)).

dangers posed by asbestos at the time plaintiff was employed on the premises. Plaintiff's case is distinguishable from *Thomas, Smith,* and *Jefferson.* First, *Roach v.Air Liquide America*, a United States District Court for the Western District of Louisiana held that the *Smtih* court expanded the general land owner duty to include that a land owner "had a duty to take reasonable steps to ensure a safe working environment for the employees of an independent contractor."[15] In *Roach*, the court held that *Smtih* was an "improper expansion of Louisiana law," and "there is a distinction between hazards that are inherent in a defendant's premises (for which a premises owner owes a duty) and hazards inherent in an independent contractor's job (for which a premises owner does not owe a duty)."[16] The *Roach* court pointed out that the hazard to the plaintiff in that case, silica, was "not inherent in defendant's premises; the airborne silica which was temporary in nature and transported to the facility by the plaintiff's employer and/or supplier. The hazard was inherent in the performance of the sandblasting."[17] Thus, the court found that the it was "employer's duty to ensure plaintiff's safety with respect to the specific hazards created by the performance of [plaintiff's] work."[18] Likewise, Plaintiff claims that her husband was exposed to asbestos from products used while employed by an independent

---

[15] *Roach v. Air Liquide America*, 2016 WL 1453074, at *4 (W.D. La. Apr. 11, 2016).
[16] *Id*.
[17] *Id.*
[18] *Id.*

contractor at Defendant's facility.  Following the *Roach* decision, there is nothing in the facts for a jury to infer that asbestos was inherent in Defendant's premises.

However, assuming that the Defendant owed Plaintiff a duty pursuant to *Smith*, Plaintiff has not presented evidence that Defendant in this case knew of the risks of asbestos, specified the use of asbestos in the construction, or that Mr. Kivell used asbestos products in the construction of the building.  For example, in *Thomas,* the employer's "construction manager, testified that in early 1970s [the company] was constructing and engineering power plants on a world-wide basis and knew of the hazards of asbestos exposure," and there was evidence of contracts for asbestos containing products to be used on the premises.[19] Similarly, in *Jefferson*, the plaintiff unloaded, handled, and transported asbestos on the defendant's premises. Additionally, in *Smith*, the plaintiff presented evidence that he was exposed to asbestos while working on the defendant's premises.  Here, Plaintiff has not presented any evidence to create a genuine issue of material fact that Defendant breached a duty owed to Mr. Kivell under Louisiana law.  Therefore, Defendant Union Carbide's Motion for Summary Judgment on Plaintiff's negligence claim is granted.

Likewise, summary judgment on Plaintiff's strict liability claim is also granted.  In Louisiana, to hold a defendant strictly liable, "the plaintiff must prove:

---

[19] *Thomas*, 933 So.2d at 853.

(1) the thing which caused the damage was in the care, custody and control of the defendant; (2) the thing had a vice or defect which created an unreasonable risk of harm; and (3) the injuries were caused by the defect."[20]  Additionally, custody, "for the purposes of strict liability, does not depend upon ownership, but involves the right of supervision, direction, and control as well as the right to benefit from the thing controlled."[21] The "[m]ere physical presence of the thing on one's premises does not constitute custody."[22] Defendant is entitled to summary judgment on the strict liability claim as well because there is nothing in the record indicating that Defendant had any type of direction, control, or ownership of an asbestos product used by Plaintiff.   Therefore, Defendant's Motion for Summary Judgment is **GRANTED**.

   **IT IS SO ORDERED.**

/s/ Calvin L. Scott

The Honorable Calvin L. Scott, Jr.

---

[20] *Migliori v. Willows Apartments,* 727 So.2d 1258, 1260 (La.Ct.App. 1999)(citing *Sistler v. Liberty Mut. Ins. Co.,* 558 So.2d 1106, 1112 (La. 1990)).
[21] *Haydel v. Hercules Transport, Inc.*, 654 So.2d 408, 414 (La.Ct.App. 1995).
[22] *Id.*