476 So.2d 1077 (1985)
Audie ANDRUS, Plaintiff-Appellant,
v.
STATE of Louisiana, DEPARTMENT OF TRANSPORTATION AND DEVELOPMENT, Defendant-Appellee.
No. 84-659.
Court of Appeal of Louisiana, Third Circuit.
October 10, 1985.
*1078 DeJean & DeJean, Thomas DeJean, Opelousas, for plaintiff-appellant.
Robert T. Talley, Baton Rouge, for defendant-appellee.
Before STOKER, DOUCET and KNOLL, JJ.
KNOLL, Judge.
Audie Andrus appeals the trial judge's dismissal of his damage claim against the State of Louisiana, Department of Transportation and Development (DOTD) as the result of a single vehicular accident. A 1980 GMC long-wheel base pickup truck driven by Andrus traveled onto the shoulder of Louisiana Highway 357, struck a stop sign in a curve, hit a ditch embankment, rolled over, and came to rest in a nearby field. As a result of the accident Andrus brought suit against DOTD alleging that the curve in question was defectively designed and improperly marked. In a bench trial, the trial judge found DOTD free from fault and concluded that Andrus's actions were the cause-in-fact of the accident. Andrus contends that the trial court erred: (1) in finding that he left the main travel portion of the highway before entering the curve; and (2) in failing to find that the curve in Highway 357 at the intersection with Nap Lane was unreasonably dangerous. We affirm, concluding that the trial judge was not manifestly erroneous in his findings of fact.

FACTS
On May 6, 1981, at approximately 10:30 p.m., Andrus, the plant manager at Di-Chem Dresser, was traveling north on Highway 357 en route to the Plantation Lounge in Opelousas, where he planned to meet an employee, Herbert Thibodeaux, to discuss the next day's work activities. Highway 357 was a two-laned roadway with double yellow lines and a 45 m.p.h. speed advisory sign indicating an upcoming curve. Andrus does not recall seeing the sign. He testified that prior to the accident he traveled Highway 357 only twice before, but never after dark. On the night of the accident, he stated that as he approached the intersection of Highway 357 and Nap Lane, the road severely curved and he ran off the roadway in the curve onto the shoulder; the vehicle never reentered the highway.
There were no witnesses to the accident. However, nearby residents heard the crash, called the police, and searched for the driver. The state troopers prepared a report at the conclusion of their investigation, and cited Andrus for failure to maintain proper control of his vehicle. Thibodeaux, who was en route to meet Andrus at the Plantation Lounge, stopped at the accident scene when he recognized the company vehicle, and brought Andrus to Opelousas General Hospital for emergency treatment. Andrus was later transferred to Lafayette General Hospital where he was diagnosed as having sustained a fractured back.

CAUSATION
Andrus contends that the trial court erred in its determination that his negligence in failing to maintain control of his vehicle and failing to maintain a proper lookout was the cause-in-fact of the accident.
Negligence is only actionable where it is both a cause-in-fact of the injury *1079 and a legal cause of the injury. Legal cause requires a proximate relation between the actions of a defendant and the harm which occurs, and such relation must be substantial in character. Sinitiere v. Lavergne, 391 So.2d 821 (La.1980). Factual causation is a question resolved by the trier of fact. Brown v. Louisiana Dept. of Highways, 373 So.2d 605 (La.App.3rd Cir. 1979), writ denied, 376 So.2d 1269 (La. 1979).
In the instant case, the determinative factual issue is whether Andrus ran off the highway in the curve, in which case DOTD's negligence would be the cause-infact of the accident, or before entering the curve, in which case his negligence would be the sole cause of the accident. On this crucial point the trial court was presented with conflicting testimony.
Trooper Overfelt, the investigating officer, and his training officer, Trooper Williams, traced the truck's tire marks and determined that Andrus left the main portion of the highway and traveled onto the shoulder before entering the curve. Andrus testified that he was traveling 45 m.p.h. in the curve. Based on the damage to the vehicle and the distance traveled after the vehicle struck the stop sign at Nap Lane (195 feet), the officers estimated that Andrus was traveling 60 m.p.h. in the curve. They concluded that the vehicle left the roadway due to the driver's inattentiveness or because he was distracted. No defect was found in the highway which would have caused Andrus's vehicle to leave the roadway.
Duaine Evans, a self-employed consulting engineer employed by Andrus, investigated the accident. He was accepted as an expert in traffic engineering and traffic accident reconstruction. He opined: (1) that the speed advisory should have been 35 m.p.h. instead of 45 m.p.h.; (2) that the curve warning sign, allegedly located 546 feet in advance of the beginning of the curve, should have been at least 750 feet prior to the beginning of the curve; and (3) there should have been alignment delineators or markers to indicate a curve. It was his conclusion that Andrus was traveling 45 m.p.h. in the curve and that Andrus was approximately 267 feet into the curve when he ran off the highway. Evans also reviewed DOTD's accident records from 1978 through May 1981. During this time, there were seven accidents in this particular curve; most of the accidents involved one vehicle, and all of the vehicles ran off the highway to the outside of the curve, as in the instant case. He concluded that the defective condition of the highway caused the accident.
James Soileau, a traffic operations specialist employed by DOTD, also investigated the accident. He concluded that the curve advisory sign was located 790 feet before the beginning of the curve, and that he could read the sign 1060 feet before entering the curve. After conducting his tests, he concluded that the speed advisory should have been set at 40 m.p.h. instead of 45 m.p.h.
DOTD admits that the speed advisory was excessive by 5 m.p.h. but asserts that this was not the legal cause of Andrus's accident.
DOTD is "not a guarantor of the safety of travelers but, rather, owes a duty to keep the highways and its shoulders reasonably safe for non-negligent motorists." (Emphasis added.); Sinitiere, supra. A motorist's duty of reasonable care includes the duty to keep his vehicle under control, and to maintain a proper lookout for hazards. Edwards v. State, Dept. of Transp. & Devel., 403 So.2d 109 (La. App.3rd Cir.1981), writ denied, 407 So.2d 733 (La.1981).
Our duty in reviewing a trial court's findings, particularly where there is conflicting testimony, was delineated in Canter v. Koehring Company, 283 So.2d 716 (La. 1973), which stated:

"When there is evidence before the trier of fact which, upon its reasonable evaluation of credibility, furnishes a reasonable factual basis for the trial court's finding, on review the appellate court should not disturb this factual *1080 finding in the absence of manifest error. Stated another way, the reviewing court must give great weight to factual conclusions of the trier of fact; where there is conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review, even though the appellate court may feel that its own evaluations and inferences are as reasonable. The reason for this wellsettled principle of review is based not only upon the trial court's better capacity to evaluate live witnesses (as compared with the appellate court's access only to a cold record), but also upon the proper allocation of trial and appellate functions between the respective courts." (Emphasis added.)

The trial judge personally evaluated and observed the accident scene after trial for the purpose of determining which of the experts' conflicting versions is worthy of belief. A trial judge may visit an accident scene to better understand the testimony of the witnesses by viewing the described physical surroundings. Maturin v. Dronet, 288 So.2d 690 (La.App.3rd Cir. 1974).
In light of the conflicting testimony on the crucial issue of causation and after viewing the accident scene, the learned trial judge concluded in his written reasons:

"Plaintiff was not in the curve when his vehicle hit the shoulder; centrifugal force could not have affected it at that point. This conclusion is supported by the testimony of the troopers. They designated on the photographs the approximate point at which the vehicle left the highway. It is clear that from those designated points southward there is no curve or beginning of one in the highway.

* * * * * *
I conclude there was nothing peculiar about the curve's night appearance that would have specially required delineators or caused plaintiff to run off the highway at the point that he did. It is noted that there are two serious discrepancies or conflicts in the evidence. One deals with whether and to what extent plaintiff was in the curve when his vehicle left the highway. The troopers' testimony placed the deviation before plaintiff reached the curve. Mr. Evans, plaintiff's expert, placed the vehicle 267 or 280 feet into the curve.
The other conflict involves the distance between the curve-warning sign and the beginning of the curve. Mr. Evans fixed that distance at 546 feet. The state's witness, J. Soileau, fixed the distance at 755 or 790 feet.
Both these discrepancies are resolved upon consideration of Mr. Evans' testimony where the curve began. He fixed it 188 feet south of the Franchebois driveway.... Mr. Evans' concept of the curve commencement is not acceptable. On both issues, the other testimony must prevail.
I conclude plaintiff ran off the main portion of the highway through lack of control or failure of lookout. Hence, it is unnecessary to inquire in the three alleged highway defects, namely, excess speed designation for a curve of that angle, insufficient distance between curve-warning sign and the curve and lack of delineators." (Emphasis added.)
Although the trial judge's written reasons for judgment draw upon his personal observations to resolve the experts' conflicting testimonies, we nevertheless conclude that the record independently supports the finding that Andrus left the main portion of the highway prior to the curve through his own negligence, and that DOTD was free of any negligence in the design, construction and the posted speed which could have been the legal cause of Andrus's injuries. In the absence of manifest error, we cannot disturb the trial court's findings of fact. Reyes v. State, 466 So.2d 538 (La.App.3rd Cir.1985), writ denied 472 So.2d 31 (La.1985); Arceneaux v. Domingue, 365 So.2d 1330 (La.1978); Canter, supra. We have carefully reviewed the evidence presented in the record *1081 and we are unable to conclude that the trial judge's findings were manifestly erroneous.
For the foregoing reasons, we affirm the judgment of the trial court. All costs of this appeal are assessed against plaintiffappellant, Audie Andrus.
AFFIRMED.