670 So.2d 245 (1996)
Lavelle TULLIS, et ux., Plaintiffs-Appellants,
v.
RAPIDES PARISH POLICE JURY, et al., Defendants-Appellees.
No. 95-905.
Court of Appeal of Louisiana, Third Circuit.
January 17, 1996.
*246 Donald R. Wilson, Marksville, for Lavelle Tullis et ux.
Steven Patrick Mansour, Alexandria, for Rapides Parish Police Jury, et al.
Edward E. Rundell, Alexandria, for Continental Insurance Co.
Before KNOLL, THIBODEAUX and AMY, JJ.
AMY, Judge.
This case arises from a vehicular collision between a Schwan's truck and a 1986 Ford Bronco on a Rapides Parish Road. Three children, Nathalie Tullis, Matthew Tullis, and Jennifer Wolfe, who were all backseat passengers in the Ford Bronco, were killed as a result of the accident. Lavelle Tullis and Linda Tullis (plaintiffs), Nathalie and Matthew Tullis' parents, filed suit against the Rapides Parish Police Jury (defendant), contending that the road conditions on the Parish Road were defective, that it was unreasonably dangerous, and that these defects were a cause in fact of the accident. After trial on the merits, the trial court dismissed plaintiffs' claims against defendant. Plaintiffs appealed. For the following reasons, we affirm.

*247 DISCUSSION OF THE RECORD
On the night of March 7, 1990, Cynthia Wolfe asked her school friend, Tracy Tullis, to accompany her to the library in the Wolfe family's 1986 Ford Bronco. Jennifer Wolfe (Cynthia's younger sister), Lavelle Tullis, Jr., Matthew Tullis, and Nathalie Tullis (Tracy's siblings) went with them. On the way home from the library, Cynthia decided to drive by the home of Robert Alexander, a boy whom she liked. While traveling on Gilley Williams Road, a narrow two lane blacktop road in North Rapides Parish, Cynthia Wolfe saw Robert Alexander's vehicle and decided to follow him. While pursuing Robert Alexander, she lost control of her vehicle, crossed the center line and collided with an oncoming Schwan's truck. Nathalie Tullis, Matthew Tullis, and Jennifer Wolfe died as a result of the accident.
Lavelle Tullis and Linda Tullis (plaintiffs), Nathalie and Matthew Tullis' parents, filed suit against the Rapides Parish Police Jury (defendant), contending that the road conditions on Gilley Williams Road were defective, rendering it unreasonably dangerous, and that these defects were a cause-in-fact of the accident.
After trial on the merits, the trial court dismissed plaintiffs' claims against defendant. In written reasons for judgment, the trial court noted that the experts at trial agreed the road is substandard, and cited the following characteristics: that it is too narrow for the volume of traffic, that the travel lanes are nine feet instead of ten feet wide, that the three 25 mph speed signs posted before the bridge were placed closer to the roadway than regulations require because portions of the shoulder along the one mile roadway are not wide enough, and that there are places along the road where there is a 5-7 inch drop-off between the surface of the road and the shoulder. Nevertheless, the trial court concluded that the dispositive issue in this case is whether or not the condition of the parish road actually caused or contributed to the accident. The trial court found that:
the plaintiffs have failed to carry the required burden of proof that the condition of the road caused or contributed to the accident. First, the evidence is insufficient to prove the car went off the road. Second, the evidence is insufficient to prove there was a drop off great enough to constitute an unreasonable risk of harm at any place where the car might have gone off of the road.
Plaintiffs timely perfected this appeal and their sole assignment of error is that the trial court's finding that the defects in Gilley Williams Road were not a cause-in-fact of the fatal accident constituted manifest error.
The record demonstrates that Gilley Williams Road is a mile long, is eighteen to nineteen feet wide, and ends at the Ball Cutoff Road. Furthermore, it was established that there is a bridge 3/10 of a mile south of the Ball Cutoff Road; that there were three posted 25 mph speed limit signs; that Cynthia was traveling north toward the Ball Cutoff Road; and that the collision occurred at a point in the road after Cynthia's vehicle had crossed over the bridge. The Bronco was in a slide and was hit broadside in the southbound lane of travel by an approaching vehicle.
Sergeant Ronald Lewis, investigating State Trooper, testified that the point of impact between the Bronco and the Schwan's truck was 120 feet north of the bridge heading toward the Ball Cutoff Road. He testified that the Bronco was heading sideways when the impact occurred and that the yaw marks present demonstrated that the vehicle had been going sideways for 70 feet. He also testified that he walked the accident scene 100 yards south of the bridge, but he did not find any excessive drop-offs or any evidence that a vehicle had left the road. He further testified that all of the Bronco's yaw marks and sideways skidding took place north of the bridge. Wilbert Sanders, a State Trooper who also investigated the scene, testified that there was no evidence that Cynthia Wolfe had left the roadway.
The record demonstrates that Cynthia Wolfe gave a voluntary statement on March 8, 1990, in which she stated that she hit a bump on the bridge. At trial, she testified that all she remembered was hearing some gravel and hitting a bump or something. Tracy Tullis, front seat passenger, testified *248 that before the bridge "for some reason we swerved and then right in the bridge it was a bump of some kind of something and then she just lost control after that." Lavelle Tullis, Jr., back seat passenger, testified that the vehicle hit a bump in the road. Robert Alexander testified that there was a bump in the bridge which jars a driver to the left. James Fister, plaintiffs' expert in road analysis, traffic engineering, and accident reconstruction, testified that there was an abrupt vertical alignment on the bridge, which a driver would feel and that it was his opinion that the road played a part in the accident.
The trial court determined that the concrete bridge on Gilley Williams Road is slightly higher than the road, causing a "bump" in the roadway, but that "the evidence was insufficient to prove the bump at the bridge constituted an unreasonable risk of harm to the traveling public." In assessing whether a thing presents an unreasonable risk of harm, the utility of the thing is balanced not only against the likelihood and magnitude of the risk; also to be considered is "a broad range of social, economic, and moral factors including the cost to the defendant of avoiding the risk and the social utility of the plaintiff's conduct at the time of the accident." Oster v. Department of Transp. and Development, 582 So.2d 1285, 1289 (La. 1991). A trial court's factual determination about whether a condition is unreasonably dangerous or presents an unreasonable risk of harm is a factual finding which will not be reversed on appeal unless it constituted manifest error. Hunter v. State DOTD, 620 So.2d 1149 (La.1993).
The Parish of Rapides has a duty to make its parish roads reasonably safe for drivers exercising ordinary care and reasonable prudence. Johnson v. American Southern, Ins. Co., 569 So.2d 1071 (La.App. 3 Cir. 1990). Since a Parish is not the guarantor of safety on its roads, the simple fact that an accident occurred does not mean that a condition presents an unreasonable risk of harm or is unreasonably dangerous. Manuel v. Wal-Mart Stores, 93-1243 (La.App. 3 Cir. 5/4/94); 640 So.2d 579, writ denied, 94-1442 (La. 9/23/94); 642 So.2d 1291; Johnson, 569 So.2d 1071. Accordingly, not every minor imperfection, irregularity, or bump in a road constitutes an unreasonably dangerous condition. Ryland v. Liberty Lloyds Ins. Co., 93-1712 (La. 1/14/94); 630 So.2d 1289; Lam v. State Dept. of Transp. & Development, 495 So.2d 359 (La.App. 3 Cir.), writ denied, 497 So.2d 1017 (La.1986); Burns v. Insured Lloyds, 417 So.2d 511 (La.App. 3 Cir.), writs denied, 420 So.2d 982 (La.1982) and 420 So.2d 984 (La.1982).
Since a motorist is charged with the duty to control his vehicle and maintain a proper lookout, what must be resolved by the trier of fact is whether the alleged defect was obviously dangerous or presented an unreasonable risk of injury to a reasonably prudent motorist. Hunter v. State, DOTD, 620 So.2d 1149 (La.1993); Andrus v. State, Dept. of Transp. and Dev., 476 So.2d 1077 (La.App. 3 Cir.1985). The trial court found that "[t]here is no dispute that Cynthia was negligent in traveling at a speed in excess of the posted 25 MPH. The evidence from two experts supports the conclusion she was traveling at 47-50 MPH." The record establishes that Lavelle, Jr. testified that Cynthia speeded up a little bit to catch Robert Alexander. Tracy testified that she thought that Cynthia was chasing Robert Alexander, that she asked Cynthia to slow down because it felt like the vehicle was going too fast for the road, and that it felt like the vehicle was traveling at 50 mph. Fister testified that he determined in reconstructing the accident that Cynthia Wolfe was traveling over the speed limit, between thirty-seven and forty-two miles per hour, and that her speed was a factor in the accident. Olin Dart, defendant's civil engineering expert with a specialty in engineering, highway design, traffic safety, and accident reconstruction, testified that from his reconstruction of the accident, he determined that Wolfe was traveling at a speed of 45 to 55 mph. Accordingly, the record supports the trial court's determination that Cynthia Wolfe was traveling in excess of the 25 mph speed limit and was negligent.
The manifest error test requires the reviewing court to consider the record as a whole to ascertain whether the trier of fact's findings and conclusions constituted *249 manifest error. Since the trier of fact's findings are accorded great weight on appeal under this standard of review, an appellate court may only reverse if it concludes from the record that a reasonable factual basis does not exist for the trier of fact's findings and further that the finding was clearly wrong based on the record. Stobart v. State through DOTD, 617 So.2d 880 (La.1993). Dart testified that there was a very small discontinuity in the surface of the bridge due to settling, but that any vehicle driving at an appropriate speed would have had no trouble negotiating the bridge or the roadway and that it would not affect a vehicle traveling at twenty-five miles per hour. It is within the trial court's discretion to accept an expert's opinion if his or her opinion is not based upon an incorrect assumption of the facts and if the opinion is supported by the record. Babineaux v. Tollie Freightways, Inc., 628 So.2d 1327 (La.App. 3 Cir.1993). After a review of the record in its entirety, we find that Dart was qualified and his opinion was not based upon an incorrect assumption of facts. Since there is a reasonable basis in the record for the trial court's acceptance of Dart's opinion, we conclude that the trial court did not manifestly err in relying on his opinion. Furthermore, based on our review of the record, we are unable to conclude that the trial court was clearly wrong in finding that "the evidence was insufficient to prove the bump at the bridge constituted an unreasonable risk of harm to the traveling public."
In written reasons for judgment, the trial court determined that "the plaintiffs have failed to carry the required burden of proof that the condition of the road caused or contributed to the accident." A defendant's conduct is a cause-in-fact of an accident if it was a substantial factor in bringing about the harm. Edwards v. City of Leesville, 465 So.2d 263 (La.App. 3 Cir.), writ denied 467 So.2d 539 (La.1985). Cause-in-fact is a factual determination which must be resolved by the fact-finder. Theriot v. Lasseigne, 93-2661 (La. 7/5/94); 640 So.2d 1305.
At trial, Fister testified that the three 25 mph signs posted along Gilley Williams Road were substandard in size and two were confusing because they had "SLOW CHILDREN AT PLAY" signs under them. He testified that the road was hazardous and dangerous, that there was no NARROW BRIDGE sign, CURVE sign, or guard rail illumination on the bridge, and that the road was substandard in width. Nevertheless, Fister testified that an experienced driver could safely negotiate the bridge at a speed of 45 to 50 mph. He testified that while it was his opinion that Cynthia Wolfe's speed was a contributing cause in the accident, he also believed that the road played a part in the accident.
At trial, Dart testified that the sole cause of this accident was the excessive speed of Cynthia Wolfe, and that he believed it would not have occurred had she not been driving at such an excessive speed. It was his opinion that none of the roadway conditions contributed in any part to the accident because it was the failure of the driver to drive appropriately that caused the accident. He testified that he did not believe that the discontinuity in the bridge was a factor in this accident. He testified that he personally traversed the bridge at speeds of 25 mph to 60 mph with no difficulty. He testified that a vehicle could handle the curve in adverse conditions at a speed of 45 mph, but that in clear conditions, such as the night of the accident, the curve could be handled by a skilled driver at a speed closer to 70 mph. He opined that the curve did not play a role in this accident. He testified that while the bridge was improperly marked in that it did not have a full set of object markers, yellow and black dashed delineator panels which are typically placed on all four corners of a bridge, he did not believe that the absence of these signs played any factor in this accident. He testified that the physical evidence failed to demonstrate any interaction with the shoulder and that he had not seen any evidence that the shoulder or drop off played a role in this accident. He testified that in his opinion the 25 mph signs played no role in this accident, and that neither curve warning signs nor a narrow bridge sign were required.
"Where the testimony of expert witnesses differ, it is the responsibility of the trier of fact to determine which evidence is *250 the most credible." Sistler v. Liberty Mut. Ins. Co., 558 So.2d 1106, 1111 (La.1990). A factual finding, based upon a credibility determination, may not be disturbed on appeal absent manifest error. Phillips v. Fisher, 93-928 (La.App. 3 Cir. 3/2/94); 634 So.2d 1305, writ denied, 94-0813 (La. 5/6/94); 637 So.2d 1056. Furthermore, a trial court's decision to accept the opinion of one expert and to reject that of another can virtually never be manifestly erroneous. Arabie v. City of Eunice, 629 So.2d 465 (La.App. 3 Cir.1993). The only time this decision will be deemed manifestly erroneous is when the court was clearly wrong in accepting the expert's opinion upon which it relied. Therefore, we find no manifest error in the trial court's determination that the plaintiffs failed to carry their burden that the road conditions on Gilley Williams Road were a substantial cause of the accident. The plaintiffs' assignment of error lacks merit.

DECREE
The trial court's judgment dismissing all of plaintiffs' claims against defendant is affirmed. All costs of this appeal are assessed to appellants.

AFFIRMED.
THIBODEAUX, Judge, concurring.
I concur in the result reached by the majority. However, I disagree with its reasoning that an unreasonably dangerous condition is a factual determination which is subject to analysis under the manifest error rule. In my view, whether a condition is unreasonably dangerous or presents an unreasonable risk of harm is a legal determination. The factual determinations which form the predicate for the ultimate finding of an unreasonably dangerous condition are subject to the manifest error methodology. However, the application of those factual findings in determining whether a condition is unreasonably dangerous is an ultimate legal conclusion not susceptible to the manifest error standard. See Green v. The City of Thibodaux, 94-1000 (La.App. 1 Cir. 10/6/95) ___ So.2d ___.