710 So.2d 1178 (1998)
Jean STEVENSON
v.
LOUISIANA PATIENT'S COMPENSATION FUND.
No. 97-CA-709.
Court of Appeal of Louisiana, Fifth Circuit.
April 9, 1998.
Rehearing Denied May 15, 1998.
*1180 Bruce A. Cranner, Blue Williams, L.L.P., Metairie, for defendant-appellant.
Darryl J. Tschirn, La Jolla, for plaintiffappellee.
Before GRISBAUM, GAUDIN and CANNELLA, JJ.
GRISBAUM, Judge.
The defendant, Louisiana Patient's Compensation Fund, appeals a jury verdict awarding damages in favor of the plaintiff, Ms. Jean Stevenson, who was misadministered a radioactive isotope (I-131) at Diagnostic Imaging Services, Inc. We affirm.

ISSUE
Our review is focused on the amount of damages awarded.

FACTS AND PROCEDURAL HISTORY
On April 23, 1990, the plaintiff was sent to Diagnostic Imaging Services, Inc. (DIS) for a diagnostic study. Due to a miscommunication between the physician, who scheduled the test, and DIS, a technician at DIS misadministered a radioactive isotope (I-131) to plaintiff, which was ten times the amount of radioactive isotopes normally given to patients for diagnostic purposes. The misadministration was immediately discovered, and plaintiff was informed of the mistake the very next day. The plaintiff was told by Dr. Edward Soll, a diagnostic radiologist and also a co-owner of DIS, that nothing could be done at that point to reverse the effects of the isotope but that plaintiff should submit to further tests to discover the amount of the isotope actually absorbed to determine the long-term consequences. Plaintiff and her husband testified at trial that they were informed by Dr. Soll that the dosage of isotope plaintiff had received put her at a higher risk of developing thyroid cancer, in addition to increased risks of osteoporosis, goiter, and hypothyroidism. Plaintiff declined to submit to further tests and, instead, went to see Dr. Mark Lueg, an endocrinologist, the next day. She was told by Dr. Lueg that the only apparent damage from the isotope was a long-range risk of thyroid failure; however, since the damaging effects of the isotope are not immediate and damage occurs slowly over a period of months, and sometimes years, the plaintiff would be monitored.
Over the next two years, Dr. Lueg continued to monitor plaintiff and conduct blood tests to measure the functioning of plaintiff's thyroid. Until 1992, plaintiff's thyroid was functioning within normal parameters. However, a test conducted in September 1992 revealed that plaintiff's thyroid had begun to fail; thus, she was placed on thyroid hormone therapy. Although plaintiff's thyroid gland improved, by 1994, the gland showed evidence of further failure.
Plaintiff filed suit on April 8, 1991, against DIS, its owners, and the physicians involved in treating her, claiming negligence on their part for the misadministration of the isotope. She also requested a review by the Medical Review Panel and voluntarily dismissed her initial suit in light of an exception of prematurity filed by some of the defendants. On January 19, 1993, the Medical Review Panel rendered a unanimous opinion concluding that DIS and its physicians and owners failed to meet the applicable standard of care. Plaintiff subsequently filed a second suit on February 18, 1993.
In March of 1995, the plaintiffs entered into a settlement with DIS, its physicians and *1181 owners, and their insurer whereby the defendants agreed to pay plaintiff the statutory maximum of $100,000.00 in exchange for their release. However, plaintiff reserved her rights against the Louisiana Patient's Compensation Fund (LPCF) pursuant to the Medical Malpractice Act and brought suit against the LPCF on May 1, 1995. Plaintiff sought to recover damages for the negligence of DIS. The matter was tried before a jury on February 3, 4, and 5, 1997. At the close of plaintiff's case, LPCF moved for a partial directed verdict, seeking judgment in its favor as to the issues of hypothyroidism, increased risk of osteoporosis, and future medical expenses, arguing that plaintiff had failed to offer any medical evidence on those issues, but this motion was denied. The jury returned a verdict in favor of plaintiff and awarded her damages of $751,000.00. The award of damages was reduced by the judge to the statutory maximum of $500,000.00, minus the $100,000.00 credit to LPCF previously agreed upon for any judgment in excess of the $100,000.00. LPCF appeals this judgment of $400,000.00.

LAW AND ANALYSIS

Standard of Review
The standard of review for damage awards requires a showing that the trier of fact abused the great discretion accorded in awarding damages. Moore v. Healthcare Elmwood, Inc., 582 So.2d 871 (La.App. 5th Cir.1991). In effect, the award must be so high or low in proportion to the injury that it "shocks the conscience." Id. The discretion vested in the trier of fact is great, "even vast," so that an appellate court should rarely disturb an award of general damages. Youn v. Maritime Overseas Corp., 623 So.2d 1257 (La.1993), cert. denied, 510 U.S. 1114, 114 S.Ct. 1059, 127 L.Ed.2d 379 (1994).
First, LPCF claims that the jury bases its assessment of damages on expert testimony that was premised on an unsubstantiated assumption of fact and/or improper hypothetical questions and answers. Specifically, LPCF contends that Dr. Soll's and Dr. Mark Mandelkern's testimonies that appellee was subject to an increased risk of cancer were premised on the conclusion that appellee's thyroid was only damaged and not destroyed. However, the testimony of Dr. Lueg, who monitored appellee, finds appellee's thyroid to be completely destroyed. This distinction between a damaged and a fully destroyed thyroid makes a difference, because the potential of cancer decreases when enough thyroid cells are destroyed. Although our jurisprudence has recognized that an expert's opinion has no value if the facts on which it is predicated are not substantiated by the record, Nealy v. LeBlanc, 94-1057 (La.App. 1st Cir. 4/7/95), 654 So.2d 468, here, there is evidence that the misadministration of the isotope increased her risk of cancer. First, the record shows that the appellee was given a misadministered amount of isotopes but the level of the isotope is not in dispute. Second, although the record shows appellee suffered thyroid damage, the expert testimony differs as to the extent of damage. However, the experts who testified agreed that a damaged thyroid gland causes a significant increase in the risk of cancer. Furthermore, Dr. Soll informed the plaintiff, one day after the misadministration, that the increased level of the isotope would increase her risk of cancer. Although there may be contradictory expert testimony regarding the actual damage to the thyroid, our jurisprudence finds that where the testimony of expert witnesses differ, it is the responsibility of the trier of fact to determine which evidence is the most credible. Tullis v. Rapides Parish Police Jury, 95-905 (La. App. 3d Cir. 1/17/96), 670 So.2d 245. A factual finding, based upon a credibility determination, may not be disturbed on appeal absent manifest error. Id. A trial court's decision to accept the opinion of one expert and to reject that of another can virtually never be manifestly erroneous, unless the court was clearly wrong in accepting the expert's opinion upon which it has relied. Id. After a careful review of the entire record, we do not find the jury's decision to accept the testimonies of the experts to be clearly wrong.
Next, LPCF alleges that the appellee failed to demonstrate an adequate basis in excess of the amount already received in the settlement. Specifically, LPCF contends that the trial court erred in failing to *1182 grant its Motion for Partial Directed Verdict because the appellee failed to offer any medical evidence on the issues of hypothyroidism, increased risk of osteoporosis, and future medical expenses, which led to an excess award. A court has much discretion in determining whether to grant a motion for a directed verdict. Lugar v. Baton Rouge Gen. Medical Center, 96-1873 (La.App. 1st Cir. 6/20/97), 696 So.2d 652, writ denied, 97-1942 (La. 11/7/97), 703 So.2d 1270. A motion for a directed verdict is appropriately granted in a jury trial when, after considering all evidentiary inferences in the light most favorable to the movant's opponent, it is clear that the facts and inferences are so overwhelmingly in favor of the moving party that reasonable men could not arrive at a contrary verdict. Id. The standard of review on appeal for directed verdicts is whether, viewing the evidence submitted, the appellate court concludes that reasonable people could not reach a contrary verdict. Id. As to the issues of hypothyroidism and increased risk of osteoporosis, although there was no medical evidence that appellee has yet suffered these symptoms, appellee was informed by Dr. Soll the day after the misadministration that the risk did exist and that she is subject to continual monitoring for the risk that hypothyroidism and osteoporosis may occur. As to the issues of future medical expenses, the record is replete with evidence that appellee must undergo continual monitoring and continue to take the drug Synthroid to maintain her thyroid level. We find the trial court did not abuse its discretion by denying the Motion for Directed Verdict, because reasonable people could reach a verdict contrary to LPCF's contentions.
LPCF next contends that "loss of enjoyment of life" is not a compensable element of general damages separate and apart from the category of mental anguish. Our jurisprudence recognizes that loss of enjoyment of life is a separate element of compensable general damages which must be determined by the trial judge and which is not necessarily included in an award for general pain and suffering. Hernandez v. Continental Casualty Ins. Co., 615 So.2d 484 (La.App. 4th Cir.1993), writ denied, 620 So.2d 850 (La.1993). Because the term "general damages" refers to those damages which may not be fixed with any degree of pecuniary exactitude, but which involve mental or physical pain or suffering, inconvenience, loss of gratification or intellectual or physical enjoyment, or other losses of lifestyle which cannot be measured definitively in terms of money, loss of enjoyment of life is included in general damages. In re Medical Review Panel, 94-1661 (La.App. 1st Cir 6/23/95), 657 So.2d 713; Foster v. Trafalgar House Oil & Gas, 603 So.2d 284 (La.App. 2d Cir.1992). We have also awarded loss of enjoyment of life as a compensable element of general damages. See Gordon v. Levet, 96-600 (La.App. 5th Cir. 1/15/97), 688 So.2d 57, writ denied, 97-0406 (La. 4/4/97), 692 So.2d 418; Lawrence v. Dep't of Transp. and Dev., 95-452 (La.App. 5th Cir. 11/28/95), 665 So.2d 551. Therefore, LPCF's contention that, as a matter of law, the option of "loss of capacity to enjoy life" should not have been provided to the jury is without merit.
We now turn to the appellant's contention that the amount of general damages awarded was excessive. As stated above, the appellate court should rarely disturb an award of general damages. Youn, supra. In reviewing an award of general damages, a court of appeal is required to focus on the total award and not on each individual item. Richard v. Teague, 92-17 (La.App. 3d Cir. 5/4/94), 636 So.2d 1160, writ denied, 94-1934 (La. 11/11/94), 644 So.2d 388. Appellee was wrongly given a radioactive isotope that caused her thyroid gland to slowly fail. She has since suffered fatigue and depression as a result of the thyroid failure. She continues to take hormone medication, on a daily basis, and continues to undergo tests to monitor the possibility of osteoporosis. Finally, she lives with the prospect that she has an increased risk to develop thyroid cancer. Viewing the record as a whole and the total general damage award, we find no abuse of the jury's vast discretion. Thus, LPCF's assignment of error is, likewise, without merit.
LPCF also argues that the trial court erred in permitting Dr. Mandelkern, appellee's expert, to testify because he was *1183 not properly identified as to his credentials or to the nature of his testimony prior to trial. Although Dr. Mandelkern's name had been provided in appellee's discovery responses and had been listed in the Pre-Trial Order, he was not identified as either a physician or the holder of a Ph.D. degree. LPCF argues they were completely unaware of Dr. Mandelkern's professional status until the appellee began questioning him at trial and contends they were ambushed because the response to their request for the identity of appellee's expert witnesses and a brief description of the testimony to be given by each expert was insufficient. Our jurisprudence provides that "[w]hether or not to allow the testimony of witnesses who were not identified in response to interrogatories is within the discretion of the trial court [and] [i]ts decision will be reversed only if an abuse of discretion is discovered on appeal." Varnell v. La. Tech Univ., 28,266 (La.App.2d Cir. 4/3/96), 671 So.2d 1238, 1240 (citations omitted) (emphasis added). Among the factors to be considered in imposing sanctions for a party's failure to comply with a discovery request is the prejudice to the other party and the wilfulness of the noncomplying party. Id. Dr. Mandelkern's name was provided in response to the discovery requests and listed on the Pretrial Order. Although his status as a radiation physicist and a nuclear medicine physician was not properly identified, we find this does not rise to the level of prejudice to the other party. Thus, the trial court was within its discretion to allow the testimony at trial.
For the foregoing reasons, the trial court's award of damages is hereby affirmed. All costs of this appeal are to be assessed against the appellant.
AFFIRMED.