801 So.2d 501 (2001)
Jimmy and Brenda BONNETTE, et al.
v.
CONOCO, INC., et al.
No. 01-0297.
Court of Appeal of Louisiana, Third Circuit.
September 12, 2001.
Writ Granted January 11, 2002.
*504 Roger G. Burgess, William B. Baggett, Baggett, McCall, Burgess & Watson, Lake Charles, LA, Counsel for Plaintiffs/Appellees: Jimmy and Brenda Bonnette, et al.
*505 Kenneth R. Spears, Swift, Spears & Harper, L.L.P., Lake Charles, LA, Counsel for Defendants/Appellants: Conoco, Inc., et al.
Joseph E. LeBlanc, Jr., Eric E. Jarrell, Elizabeth S. Wheeler, King, LeBlanc & Bland, L.L.P., New Orleans, LA, Counsel for Defendants/Appellants: Conoco, Inc., et al.
Mark R. Zehler, Corporate Counsel, Houston, TX, Counsel for Defendant/Appellant: Conoco, Inc.
Robert E. Arceneaux, New Orleans, LA, Counsel for Defendants/Appellants: Conoco, Inc., et al.
Court composed of ULYSSES GENE THIBODEAUX, JOHN D. SAUNDERS and MICHAEL G. SULLIVAN, Judges.
THIBODEAUX, Judge.
The defendant, Conoco Inc., appeals a judgment in favor of the plaintiffs, Jimmy and Brenda Bonnette, et al., in this suit for damages arising from exposure to asbestos. The trial court found that the plaintiffs had experienced increased exposure to harmful respirable asbestos fibers as a result of the failure of Conoco, Inc. to prevent the release of asbestos-containing soil. The court awarded compensatory personal injury damages, property damages, damages for fear of cancer, damages for increased risk of a future injury, and punitive damages. For the reasons listed below, we affirm the awards.

I.

ISSUES
We shall examine the following issues:
(1) whether Conoco wantonly and recklessly engaged in the handling, storage or transportation of a hazardous substance;
(2) whether damages for fear of contraction of a future disease may be awarded as the result of exposure to an allegedly hazardous substance;
(3) whether Louisiana recognizes a cause of action for the increased risk of contraction of a disease in the future; and
(4) whether property damages can be awarded for asbestos-contaminated property?

II.

FACTS
This case concerns the claims for damages by 143 residents of Westlake, Louisiana, who were found by the trial court to have been exposed to asbestos derived from transite from abandoned houses near a refinery owned by Conoco, the defendant. The houses had been demolished on property owned by Conoco to make way for a new lube oil hydrocracker (LOHC). The residents, the plaintiffs in this case, had purchased dirt from Daigle Bros., Inc., one of three dirt contractors used by Conoco to remove and replace soil from the site where the houses were demolished. Transite was allegedly present in the dirt purchased by the plaintiffs. Prior to beginning excavation of the site, Conoco performed a "level one" environmental assessment and hired contractors to identify any house that might have contained asbestos. The asbestos contractors placed polyvinyl barriers around the houses while the abatement work was being performed to contain any loose transite that could be dislodged during abatement. Following the abatement, Phillip Environmental, a subcontractor to one of Conoco's independent contractors, performed a visual inspection.
One plaintiff (not included in those before the trial court) discovered small *506 chunks of material that contained asbestos in the soil delivered by Daigle and originated with Conoco. Conoco received inquiries about whether the soil from the project site may have contained asbestos-containing material (ACM) and set up a Hotline for concerned citizens. This Hotline offered a vehicle whereby anyone suspecting that their soil might contain asbestos could have it tested. Conoco offered to remediate any yards which thought to contain soil from the site. A number of plaintiffs accepted the offer, and the soil was removed and remediated by Conoco.
The trial court found that Conoco knew or should have known that the top soil was being sold and delivered to the plaintiffs and that it knew or should have known that the soil contained asbestos. The trial court then found that the plaintiffs had been exposed to an asbestos fiber count which gave them a slight increased risk of developing an asbestos-related disease. Thus, the trial court also found that knowledge of this risk, combined with their general knowledge that asbestos fibers can cause cancer, caused them mental anguish arising out of the fear of developing an asbestos-related disease. The court then awarded the plaintiffs the following amounts of damages to twelve of the plaintiffs: property damages ranging from $700 to $3,600 to each adult plaintiff depending on the decreased value of the property; general damages for past, present and future mental anguish in the amount of $12,500 for each of the nine adult plaintiffs and $20,000 for each of the three minor plaintiffs; $10,000 to each plaintiff for the increased risk of cancer; and $7,500 to each plaintiff for punitive damages. Eight of the plaintiffs received either $900 or $1,500 for medical expenses, and four received from $4,000 to $6,250 for future psychotherapy.

III.

LAW AND DISCUSSION

Standard of Review
The reviewing court must give great weight to the factual conclusions of the trial court. Linzay v. Haas Inv. Co., Inc., 576 So.2d 1178 (La.App. 3 Cir.1991). Manifest error is the standard used by appellate courts to resolve conflicting factual evidence. Ambrose v. New Orleans Police Department Ambulance Service, et al., 93-3099 (La.7/5/94) 639 So.2d 216. This means that where a reasonable factual basis exists for those findings, they should not be disturbed by the appellate court in the absence of manifest error. Linzay, 576 So.2d at 1180. A court of appeal may set aside a trial court's or a jury's finding of fact if it finds that there was manifest error or if the decision was clearly wrong. Mistich v. Volkswagen, 95-0939 (La.1/29/96); 666 So.2d 1073, 1077; Rosell v. ESCO, 549 So.2d 840, 844 (La. 1989); Arceneaux v. Domingue, 365 So.2d 1330, 1333 (La.1978). If the trial court or jury findings are reasonable in light of the record reviewed in its entirety, the court of appeal may not reverse even if it is convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently. Stobart v. State, Through DOTD, 617 So.2d 880 (La.1993); Housley v. Cerise, 579 So.2d 973 (La.1991); Sistler v. Liberty Mutual Ins. Co., 558 So.2d 1106 (La.1990). For the reviewing court, the issue to be resolved is not whether the trier of fact was wrong but whether the factfinder's conclusions were reasonable. Stobart, 617 So.2d 880; Theriot v. Lasseigne, 640 So.2d 1305 (La.1994). Thus, where there is a conflict in the testimony, the trial court's reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review even if the appellate court may feel that its own evaluations and inferences are *507 as reasonable. Arceneaux, supra at 1333, Watson v. State Farm Fire & Casualty Ins. Co., 469 So.2d 967 (La.1985).

The Reckless Handling of a Hazardous Substance
The trial court awarded punitive damages under La.Civ.Code art. 2315.3 (repealed in 1996). Article 2315.3 allowed punitive damages for injuries caused by the wanton or reckless disregard of public safety in the storage, handling, or transportation of hazardous or toxic substances. In its opinion, the trial court found that, although Conoco was "reckless in some degree," this recklessness was not of a level justifying an award of substantial punitive damages. The court found that $7,500 per plaintiff was an amount sufficient to deter Conoco from similar conduct in the future. Conoco argues that it did not engage in reckless or wanton disregard for the safety of the public. The defendant also argues that "reckless in some degree" does not rise to the level of "wanton and reckless" conduct as required by the statute and that the trial court erred in imposing punitive damages in the face of such a finding. Conoco further argues that it did not engage in the handling, storage or transportation of a hazardous substance.
The purpose of Article 2315.3 was to protect the public from risk of harm by imposing a civil penalty on handlers of toxic substances for the breach of a statutory duty to protect the public. The statutory duty and penalty were not intended to serve as a means of additional compensation for the victim. Instead, the duty was intended to protect the public from future risks of harm from toxic and hazardous substances by punishing and deterring violators of that duty. Billiot v. B.P. Oil Co., 93-1118 (La.9/29/94); 645 So.2d 604.
Statutes imposing a penalty such as punitive or exemplary damages are to be strictly construed. Gibbs Const. Co., Inc. v. State, Dept. of Labor, 540 So.2d 268, (La.1989). In other words, punitive damages can only be imposed for the particular wrong expressly authorized by the statute. Billiot, 645 So.2d 604. To recover under Article 2315.3 the following is required:
[T]he plaintiff first must prove that the defendant's conduct was wanton or reckless.... Second, the plaintiff must show that the danger created by the defendant's wanton or reckless conduct threatened or endangered the public safety. Third, the statute requires proof that the defendant's wanton or reckless conduct occurred in the storage, handling or transportation of hazardous or toxic substances. Finally, the plaintiff is required to prove that his or her injury was caused by the defendant's wanton or reckless conduct consisting of all of these elements.
Billiot, 645 So.2d at 613.
Whether Conoco engaged in reckless conduct is a question of fact that we must review under the manifest error standard. Ambrose, 639 So.2d 216. In order for Article 2315.3 to apply, the plaintiffs must prove that Conoco acted wantonly and recklessly and that this conduct constituted "an extreme departure from ordinary care in situations where high degree of danger is apparent." Labbe v. Chemical Waste Management, Inc., 99-1562, p. 7 (La.App. 3 Cir. 3/29/00); 756 So.2d 613, 617. This court has interpreted "wanton and reckless disregard," for purposes of Article 2315.3, to mean a "conscious indifference to consequences amounting almost to a willingness that harm to the public safety would follow." Fuselier v. Amoco Production Co., 607 So.2d 1044, 1050 (La.App. 3 Cir.1992); *508 Quick v. Myers Welding and Fabricating, Inc., 94-282, p. 5 (La.App. 3 Cir. 12/7/94); 649 So.2d 999, 1003. Conduct of a wanton or reckless nature usually means
[T]he actor has intentionally done an act of unreasonable character in reckless disregard of the risk known to him, or so obvious that he must be taken to have been aware of it, and so great as to make it highly probable that harm would follow. It usually is accompanied by a conscious indifference to consequences, amounting almost to a willingness that harm should follow.
Cates v. Beauregard Elec. Co-op., Inc., 316 So.2d 907, 916 (La.App. 3 Cir.1975), cert. denied, 429 U.S. 833, 97 S.Ct. 97, 50 L.Ed.2d 98 (1976).
There are no degrees of recklessness. The trial court, unfortunately, used imprecise language and held that Conoco's conduct was "somewhat reckless." Nonetheless, the court did find Conoco's conduct reckless, and we find no manifest error in this finding.
David Williams, Conoco's primary coordinator for environmental issues of the LOHC Project, was in charge of the level one environmental site assessment of the property at issue prior to the excavation. A level one site assessment consists largely of a visual inspection of the properties as well as an analysis of the state and federal databases from the Environmental Protection Agency (EPA) which cover a particular area. A level two assessment involves the taking of samples. Mr. Williams testified that Applied Earth Sciences conducted the level one environmental site assessment of the property. Although Mr. Williams had no training for asbestos, in his asbestos investigation report, he noted that the level one assessment revealed the existence of asbestos transite tiles on the exterior of two of the abandoned houses on the site. Mr. Williams testified that a level two assessment is done if the level one assessment reveals an environmental concern. Prior to excavation, Mr. Williams tested the soil at the excavation site for heavy metals and hydrocarbons to comply with the Louisiana Department of Environmental Quality (DEQ) requirements. In spite of the presence of transite tiles, he failed to inform DEQ of the asbestos-containing materials. He stated that he did not follow level one with a level two assessment of the asbestos because it was not required by law and because he is not an asbestos expert.
Conoco's protocol for taking soil samples requires that soil samples be taken prior to and/or upon excavation of surface and/or subsurface soil. The soil samples must be analyzed for hazardous materials in compliance with analysis parameters determined by the environmental professional managing the project. Mr. Williams, who managed the LOHC project, did not establish soil analysis parameters to assess asbestos levels. He admitted to having no experience with asbestos and testified that there were "much more qualified people in the field of asbestos that work for Conoco." In spite of his lack of experience, Mr. Williams told no one about the asbestos transite tiles found in the level one assessment.
William E. Coltrin, program manager of the Louisiana Department of Environmental Quality (DEQ) and a certified asbestos inspector, was called to testify for defendant. Coltrin testified that he notified Conoco that transite materials had been found in the soil transported from the LOHC project site. Because the soil did not contain much asbestos material, DEQ concluded that the soil was not regulated material and, therefore, could be disposed in a landfill. Consequently, DEQ advised Conoco to pick up the obvious transite materials and dispose of them. Conoco *509 volunteered to do more than DEQ required and to remove the soil and transite, returning the plaintiffs' properties to the same state they had been before the soil was transported from the project site.
The remediation steps taken by Conoco after the soil had been distributed to the plaintiffs and asbestos had been discovered on the plaintiffs' properties is irrelevant to the issue of whether or not Conoco behaved recklessly during the removal and transportation of the soil and debris from the demolition site. Although Conoco complied and went beyond the DEQ requirements, Conoco's unreasonable and reckless behavior in removing and transporting the soil is not excused. Unreasonable conduct is not excused when one merely complies with minimum regulatory requirements. Corley v. Gene Allen Serv., Inc., 425 So.2d 781 (La.App. 3 Cir. 1982); Southern Natural Gas Co. v. Gulf Oil Corp., 320 So.2d 917 (La.App. 3 Cir. 1975); Hopper v. Crown, 93-2021 (La.App. 1 Cir. 10/7/94); 646 So.2d 933.
Conoco could have selected an individual with experience and knowledge of asbestos contamination to oversee the environmental issues for the LOHC project. Instead, Conoco chose Mr. Williams to oversee the project. Mr. Williams was aware of asbestos-containing materials present at the LOHC project site but seems to have ignored the environmental hazard by failing to do a level two assessment and by failing to report the presence of asbestos at the site. Conoco did not take soil samples to determine the extent of asbestos contamination of the property prior to contracting to have the soil removed. Had this been done, the asbestos-containing material likely would have been discovered and properly disposed of rather than been disseminated in the community. Daigle Brothers and any other haulers of the contamination should have then been notified by Conoco so as to ensure proper handling. Instead, Conoco contracted to have the dirt hauled away and did not at all indicate to the contractors that the soil was potentially hazardous even though transite tiles were visible on the houses at the site. Thus, it was Conoco's reckless disregard of the asbestos which led to the contaminated soil being distributed by Daigle Brothers, posing a threat to public safety and injuring the plaintiffs.
Conoco argues it was not engaged in the handling, storage or transportation of hazardous materials. Conoco asserts that merely contracting to have the soil removed does not amount to storage, handling or transportation. Although Conoco did not actually excavate and haul the soil, it is responsible for the storage, handling, and transportation of the asbestos-containing materials because it hired Daigle Brothers to haul the soil.
Conoco further asserts that soil is not a hazardous material. Coltrin stated that at the time the houses were demolished by Conoco to make way for the LOHC project, under DEQ interpretations of the existing EPA and DEQ guidelines, single family dwellings were not considered to be a "facility" which would be subject to DEQ asbestos regulations. Therefore, the demolition of the houses was a nonregulated activity, and DEQ would have no enforcement activity or responsibilities. Similarly, the removal of the surrounding soil, which is at issue here, would also have been a nonregulated activity. In spite of Coltrin's testimony, there was a dispute among the experts over whether or not the asbestos in the soil was friable or nonfriable, and whether nonfriable asbestos can be as hazardous as friable asbestos. It was the responsibility of the trier of fact to determine which evidence was most credible. Sistler v. Liberty Mut. Ins. Co., 558 So.2d 1106 (La. *510 1990). Where there are two permissible views of the evidence, the factfinder's choice between them cannot be manifestly erroneous or clearly wrong. Rosell v. ESCO, 549 So.2d 840 (La.1989). Thus, we find no manifest error in the trial court's finding that Conoco was reckless in handling, storing or transporting a hazardous material.
After finding that Conoco's behavior was reckless, the trial court awarded punitive damages of $7,500 to each plaintiff. Louisiana appellate courts apply the abuse of discretion standard of review in determining whether the trial court's punitive damage award is excessive. Jordan v. Intercontinental Bulktank Corp., 621 So.2d 1141 (La.App. 1 Cir.1993). In Re New Orleans Train Car Leakage Fire Litigation, XXXX-XXXX (La.App. 4 Cir. 6/27/01); 795 So.2d 364. If an abuse of discretion is found in a damage award, the appellate court will lower the award to the highest amount or raise the award to the lowest amount reasonably within the discretion afforded the trial court. Id. Although we seriously question whether a mere $7,500 for each of the twelve plaintiffs constitutes serious punishment or a deterrent to a company as large as Conoco, we do not find that the trial judge abused his discretion in awarding this sum and the propriety of this award has not been appealed by the plaintiffs. Therefore, we affirm the trial court's finding that Conoco pay punitive damages under Article 2315.3.

Damages for Fear of Contraction of a Future Disease
Louisiana law is clear that a plaintiff may be awarded damages for the fear of getting cancer. Anderson v. Welding Testing Laboratory, Inc., 304 So.2d 351 (La.1974). In an action for cancerphobia, a plaintiff must, as a threshold matter, present evidence of his particular fear of developing cancer in the future. Asbestos v. Bordelon, 96-0525 (La.App. 4 Cir. 10/21/98); 726 So.2d 926; Smith v. A.C. & S., Inc., 843 F.2d 854, 859 (5th Cir.1988).
Conoco argues that the plaintiffs should not have been awarded damages for fear of cancer absent proof of significant exposure. They also argue that the plaintiffs' alleged fear is not reasonably related to the minimal exposure possibly related to Conoco's alleged misconduct. To support their arguments, Conoco relies on Moresi v. State, Through Department of Wildlife and Fisheries, 567 So.2d 1081 (La.1990). In Moresi, the Louisiana Supreme Court held that generally a defendant will not be liable for emotional injury if there is no accompanying physical injury. Louisiana courts may deviate from this general rule when there is "the especial likelihood of genuine and serious mental distress, arising from the special circumstances, which serves as a guarantee that the claim is not spurious." Id. at 1096.
Conoco asserts that the plaintiffs' fear of asbestos-related disease is irrational and that the Moresi holding was intended to prevent claims of fear that are rooted in such irrational speculation. Expert testimony suggested that any additional asbestos exposure suffered by the plaintiffs was below the amount of asbestos exposure that the typical individual receives as a result of levels present in the ambient, or background, air. Conoco believes that such minimal possible exposure does not warrant recovery for fear.
This Court addressed this issue in an analogous case, Lilley v. Board of Supervisors of Louisiana State University, 98-1277 (La.App. 3 Cir.1999); 735 So.2d 696. In Lilley, firefighters were exposed to asbestos while fighting a fire, repairing a room, and being trained in an old barn. This Court held that the circumstances *511 allowed recovery for mental injuries under Moresi. The firefighters presented evidence that their minimal exposure could have increased their risk of developing an asbestos-related disease. Likewise, the plaintiffs presented expert testimony that minimal asbestos exposure could have increased their risk of developing an asbestos-related disease. The plaintiffs were evaluated for psychological trauma resulting from exposure to asbestos. These special circumstances led to genuine mental distress and warrant recovery under Moresi.
Further, Conoco argues that there is no evidence that dust samples taken from the plaintiffs' homes contained asbestos that originated from the contaminated dirt transported by Conoco. Both plaintiffs' and Conoco's expert witnesses testified that asbestos was present in the dirt that was placed on the plaintiffs' property by Conoco. Both sides also found asbestos in dust in the plaintiffs' homes. Both sides agreed that it was impossible to identify the exact source of the asbestos found in the plaintiffs' homes because asbestos is prevalent in the ambient.
On the other hand, the parties disagreed about the amount of asbestos present in the homes, the toxicity of the transite asbestos found on the property, and the level and duration of asbestos exposure that is considered harmful. The plaintiffs' experts testified that, even if the plaintiffs were exposed to very small amounts of asbestos, one fiber of asbestos could theoretically result in cancer. Conoco's expert testified that, with such a small amount of asbestos, the plaintiffs would have to live in their homes 6,000 hours a year for 850 years to develop cancer.
As the reviewing court, we cannot substitute our judgment for that of the trial court with respect to issues of fact when there are two permissible views of the evidence. Rosell, 549 So.2d 840. Although the experts are unsure of the source of asbestos in the plaintiffs' homes and the experts disagree about the likelihood that plaintiffs will develop an asbestos-related disease as a result of their exposure to the Conoco soil, it is clear that even minimal exposure to the Conoco soil could possibly cause an asbestos-related disease. A plaintiff need only show that cancer could occur. Anderson, 304 So.2d 351. "[I]f there is any possibility of acquiring a disease, no matter how remote, a person's fear of acquiring that disease is compensable." Raney v. Walter O. Moss Regional Hosp., 629 So.2d 485, 491 (La. App. 3 Cir.1993). Under Raney, even though the possibility of acquiring the disease is remote, the plaintiff's fear of acquiring that disease is compensable. Therefore, we find no manifest error in the trial court's award of damages for fear of contracting cancer.

The Increased Risk of Contraction of a Disease
In addition to damages for fear of cancer, the trial court awarded each plaintiff $10,000 for the increased risk of developing asbestos-related disease. Conoco argues that, although Louisiana courts have recognized a cause of action for increased risk of injury, the law requires that an actionable physical injury be present to recover. The dispute in this case centers around the definition of actionable physical injury. Conoco contends that asbestos exposure is not an actionable injury unless there is significant exposure with a significantly increased risk of disease and that plaintiffs cannot recover because they only suffered minimal exposure causing an unquantified risk. The plaintiffs, on the other hand, argue that inhaling a single asbestos fiber constitutes an actionable physical injury.
*512 Conoco relies on Bourgeios v. A.P. Green Indus., Inc., 97-3188 (La.1998); 716 So.2d 355, to support its contention that the plaintiffs did not meet the requirement of significant exposure with a significantly increased risk of disease for their injuries to be actionable. Unlike this case, Bourgeois involved a claim for medical monitoring to prevent future disease or injury. The plaintiffs in this case were not awarded a sum for medical monitoring, but were awarded compensatory damages for a present injury. Further, the amount of risk required for medical monitoring has not been quantified either by this Court or by the supreme court. The supreme court stated that "[n]o particular level of quantification is necessary to satisfy the [medical monitoring] requirement of increased risk." Id. at p. 9; at 360, quoted in Lilley, 735 So.2d at 706. Further, the "plaintiff need not prove a certain probability of actually suffering physical harm because of his or her exposure." Id. Consequently, Bourgeois does not fully support Conoco's argument.
In deciding when insurance coverage under an employer's liability policy was triggered, the Louisiana Supreme Court has adopted the "exposure theory" for asbestos inhalation. Cole v. Celotex Corp., 599 So.2d 1058 (La.1992). The court stated:
[t]he exposure theory comports with a literal construction of the policy language: "`bodily injury' should be construed to include the tissue damage which takes place upon initial inhalation of asbestos"... medical evidence, indicat[ed] that "[i]njury, in the sense that there is tissue damage, occurs shortly after the initial inhalation of asbestos fibers ... [with e]ach additional inhalation of asbestos fibers result[ing] in the build-up of additional scar tissue in the lungs."
Id. at 1076 (quoting Insurance Co. of N. Am. v. Forty-Eight Insulations, Inc., 633 F.2d 1212 (6th Cir.1980)) (citations omitted).
It is difficult to prove actual asbestos injury until a disease has manifested itself. However, the plaintiffs argue that the inhalation of asbestos fibers itself is an injury, whether or not there is the manifestation of any symptoms of an asbestos-related disease. According to plaintiffs' argument, inhaling one fiber of asbestos is an actionable harm or injury. The supreme court's reasoning in Cole supports this argument.
To further support this view, the plaintiffs presented the testimony of Dr. Richard Lemen, an epidemiologist, who stated that one asbestos fiber could be enough to induce cellular change that would result in cancer. Conoco's experts disagreed with Dr. Lemen, but the trial court accepted Dr. Lemen's testimony. Where there are two permissible views of the evidence, the factfinder's choice between them cannot be manifestly erroneous or clearly wrong. Rosell v. ESCO, 549 So.2d 840 (La.1989). Therefore, we find no error in the trial court's award of compensatory damages for increased risk of developing an asbestos-related disease.

Property Damages For Stigma
Conoco argues that the trial court erred in its award of property damages stating the fact-finder wrongly found the testimony of the plaintiffs' expert appraiser, Leonard Pauley, credible. It argues that Pauley's opinion was not based on any valid methodology and failed to consider all the relevant facts. Specifically, regarding the methodology, Conoco argues that Pauley erroneously analogized the stigma of asbestos contamination to a property to the stigma suffered by a property following flood damage. Mr. Pauley failed, it is *513 argued, to take several factors in consideration in his ten percent diminution in value. To wit, he failed to consider the alternative sources of asbestos in the home and on the property, that the transite was considered by DEQ to be non-hazardous, and he failed to consider the value of the extras and improvements undertaken as part of the remediation.
Where there is a legal right to recovery of damages but the amount cannot be exactly determined, the trial courts have reasonable discretion to assess them based upon all the facts and circumstances of the particular case. Fortson v. Louisiana Power & Light Co., 509 So.2d 743 (La.App. 3 Cir.1987). Upon appellate review, damage awards will be disturbed only when the court has clearly abused that discretion. La. C.C. art. 2324.1; Williams v. City of Baton Rouge, 98-1981, 98-2024 (La.4/13/99); 731 So.2d 240.
Here, the trial court stated it found the testimony of Charles Cummings, Conoco's expert witness, totally incredible. Specifically, the court rejected Mr. Cummings' assertion that future buyers of the plaintiffs' properties would be more likely to buy a home "that had been contaminated with asbestos and cleaned, than a home never contaminated with asbestos." We agree with the trial court. Public fears and concerns regarding the health effects of asbestos are very real and serious. This is especially so because the fibers that are dangerous are imperceptible to the naked eye. A homebuyer looks to find a dwelling where she can be reasonably certain that her family will be safe from harm, not subjected to potential harm. In fact, we find it incredibly ironic that Conoco's own witnesses refer to the public's fears as "a public hysteria about asbestos." However, this "public, hysteria" affects the public's image of a home that has been contaminated with asbestos. Whether or not this negative perception is justified is irrelevant. The stigma is real for purposes of the market value of the property. We agree with the trial court's findings as to the diminution of property value of the plaintiffs' homes.

The Court's Inquiry into the Qualifications of Plaintiffs' Expert Witness
Conoco argues that the district court should have excluded certain of the plaintiffs' experts on Daubert grounds. The requirements of expert testimony are set forth in La.C.E. article 702. It states as follows:
[i]f scientific, technical or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify thereto in the form of an opinion or otherwise.
Louisiana has adopted the United States Supreme Court's interpretation of Federal Rule of Evidence 702, which mirrors Louisiana Code of Evidence article 702. State v. Foret, 628 So.2d 1116 (La.1993); White v. State Farm Mutual Automobile Ins. Co., 95-551 (La.App. 3 Cir. 7/17/96); 680 So.2d 1; Daubert v. Merrell Dow Pharmaceuticals, 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993). Daubert calls upon trial courts to perform a gate-keeping function by deciding whether the expert evidence or testimony is both reliable and relevant. Daubert, 509 U.S. at 588, 113 S.Ct. at 2794. Appellate courts must show deference to the trial court in their evaluation of the trial judge's decision regrading the admissibility of expert testimony pursuant to La. C.E. art. 702. The Louisiana Supreme Court has stated: "[a] trial judge has wide discretion in determining whether to allow a witness to testify as an *514 expert, and his judgment will not be disturbed by an appellate court unless it is clearly erroneous." Mistich v. Volkswagen of Germany, Inc., 95-0939, p. 8 (La.1/29/96) 666 So.2d 1073, 1079. Thus, a trial court's decision to accept the opinion of certain experts and to reject that of others is almost never manifestly erroneous. Tullis v. Rapides Parish Police Jury, 95-905 (La.App. 3 Cir. 1/17/96); 670 So.2d 245. Manifest error is only found when the court was clearly wrong in accepting expert's opinion upon which it relied. Id.
Conoco points specifically to Dr. Millette's testimony and the chain of custody of the soil samples upon which he relied for his conclusions. The trial court stopped the direct testimony upon Conoco's objection and called Roy Scobee to the stand. The trial court then determined that there was a reliable chain of custody. Regarding Mr. Lauderdale's samplings, which Conoco protests on grounds of a lack of experience with ASTM protocol, the trial court was apparently sufficiently satisfied with his expertise in the handling of asbestos. We find no abuse of discretion in the trial court's decision.

IV.

CONCLUSION
For the foregoing reasons, we affirm the trial court's award to plaintiffs of property damages for stigma, compensatory personal injury damages for fear of contraction of cancer and for increased risk of disease, and punitive damages under Louisiana Civil Code Article 2315.3. Costs of this appeal are assessed against defendant-appellant, Conoco, Inc.
AFFIRMED.